# HERTZ, COLLECTOR, *v.* WOODMAN.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 640.    Argued April 25, 26, 1910.—Decided May 31, 1910.

Where, as in this case, the certificate sufficiently states both the question and the desire of the Circuit Court of Appeals for instructions so that it may make a proper decision, it conforms in substance to the provisions of § 6 of the act of March 3, 1891, c. 517, 26 Stat. 826.

The rule of *stare decisis* tends to uniformity and consistency of decision but it is not inflexible, and it is within the discretion of a court to follow or depart from its prior decisions.

It is the practice of this court to affirm without opinion where the judgment under review is not decided to be erroneous by a majority of the court sitting in the cause.

While the affirmance of a judgment by this court by a divided court is a conclusive adjudication between the parties, it is not an authority on the principles of law involved for the determination of other cases in this or in inferior courts; and this, although a different rule has been sanctioned in England.

While an unqualified repeal of a law operates to destroy inchoate rights as a release of imperfect obligations and as a remission of penalties and forfeitures dependent upon the destroyed statute, § 13, Rev. Stat., based on § 4 of the act of February 25, 1871, c. 71, 16 Stat. 431, operates, unless the repealing act does not expressly or by implication exclude such operation, as a general saving clause for all repealing statutes and extends not only to penalties and forfeitures but to liabilities under the repealed statute. *Great Northern Railway Co.* v. *United States,* 208 U. S. 452.

Upon the passing by death of a vested right to the immediate possession or enjoyment of a legacy or distributive share there was imposed by the inheritance tax provisions of the War Revenue Act of 1898

the tax or duty exacted upon every such right of succession which was saved by the saving clause of the repealing act of April 12, 1902. *Mason* v. *Sargent*, 104 U. S. 689, distinguished.

Although in the statute a time limit as to payment of a tax upon distributive shares and legacies may refer to the death of the testator, it may be construed as applying to shares in intestate estates as well as to legacies from testators, the omission being supplied by necessary implication.

The fact that the testator died within one year immediately prior to the taking effect of the repealing act of April 12, 1902, c. 500, 32 Stat. 96, does not relieve from taxation legacies otherwise taxable under §§ 29 and 30 of the War Revenue Act of June 13, 1898, c. 448, 30 Stat. 448, as amended by the act of March 2, 1901, c. 803, 31 Stat. 895.

THE facts, which involve the construction of the act of April 12, 1902, c. 500, 32 Stat. 96, repealing certain provisions of the war revenue act of 1898 relating to inheritance taxes, are stated in the opinion.

*The Solicitor General* for the plaintiff in error.

*Mr. H. T. Newcomb*, with whom *Mr. Edward Lauterbach* was on the brief, for the defendant in error:

The question was improperly certified and should not be answered because the Circuit Court of Appeals does not require the instruction for a proper decision. *Columbus Watch Co.* v. *Robbins*, 148 U. S. 266, 269.

This precise question has twice been argued before this tribunal, *Eidman* v. *Tilghman*, 136 Fed. Rep. 141; 203 U. S. 580, and *Philadelphia Trust Co.* v. *McCoach*, 142 Fed. Rep. 120; 203 U. S. 539, two cases, and four times this court has affirmed judgments which depended upon its affirmative decision, *Norris* v. *McCoach*, 142 Fed. Rep. 120; 203 U. S. 539, three times as above, and in a fifth case, *United States* v. *Marion Trust Co.*, 143 Fed. Rep. 301; 203 U. S. 594, a judgment was affirmed which, although involving the estate of an intestate, cannot be reconciled with any theory of interpretation except that

which requires an affirmative response to the question certified. In two subsequent cases, *United States* v. *Stephenson*, and *Kinney* v. *Conant*, 166 Fed. Rep. 720; 214 U. S. 526, the United States has sought to bring the question again before this court with the effect that judgments against the United States involving the affirmative decision of the present question have been so far sanctioned by this court as to become final and binding upon the parties.

The trial court was bound by the judgment of the Circuit Court of Appeals for the Seventh Circuit in *United States* v. *Stephenson*, decided May 20, 1908, not reported; certiorari refused, 212 U. S. 572, and *United States* v. *Marion Trust Co.*, 143 Fed. Rep. 301, affirmed, 203 U. S. 594, and, as it committed no error in following those cases, its judgment should have been affirmed. It was bound to apply the rule of *stare decisis* to this case and this is not affected by the fact that the Circuit Court of Appeals for the Eighth Circuit, in *Westhus* v. *Union Trust Co.*, 164 Fed. Rep. 795, *S. C.*, 165 Fed. Rep. 617, adopted a different conclusion.

Even if a single affirmance, when this court is equally divided, does not settle the law, *Durant* v. *Essex Co.*, 7 Wall. 107, so as to constitute an authority in this court, such an affirmance binds every subordinate tribunal. 26 Amer. & Eng. Ency. Law, 2d ed., 165; *State Tax Law Cases*, 54 Michigan, 417, 444; *City of Florence* v. *Berry*, 62 S. Car. 469; note by Horace Binney Wallace appended to *Krebs* v. *The Carlisle Bank*, 2 Wallace, Jr., 49, citing *Durant* v. *Essex Co.*, 7 Wall. 107. And see Appendix to 7 Wall. 735; *Beamish* v. *Beamish*, 9 H. L. Cas. 274; *S. C.*, 5 L. J. 97; *Lessier* v. *Price*, 12 How. 72.

The rulings of the Circuit Judge were adopted and affirmed by the judgment rendered in the Supreme Court, in like manner that they would have been had both judges concurred in affirming the judgment on all the

grounds assumed by the court below; to hold otherwise would be declaring that nothing had been decided in the state court of last resort, and thereby a second writ of error to this court would be defeated. This is true notwithstanding, the contrary conclusion was reached in ·Hanifen v. Armitage, 117 Fed. Rep. 845, and Westhus v. Union Trust Co., 168 Fed. Rep. 617.

The interpretation of the act of June 13, 1898, should now be regarded as settled because in no less than seven cases, with the express sanction of the Supreme Court, citizens, similarly situated in every respect, have been finally relieved from the payment of the tax; besides, a contrary conclusion would make the tax operate unequally and create gross injustice.

Numerous cases, in addition to those already referred to, involving the question now presented, have been decided against the Government and applications· for the writ of certiorari not having been ·made to this court within the proper time, these judgments have become final. Among these cases are: Gill v. Austin, 157 Fed. Rep. 234; Lawrence v. Jordan (not reported); United States v. Rouss (not reported); McCoach v. Bamberger, 161 Fed. Rep. 90.

These cases are now res judicata; the estates affected have forever escaped the exaction of the tax. On the authority of these judgments and those cited under the preceding heading, many other estates have been distributed without the payment of the tax and without litigation and the property so distributed is no longer within the reach of the collectors; these estates have forever escaped the exaction of the tax.

Where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute. Knowlton v. Moore, 178 U. S. 41, 77.

Congress intended to prevent the collection of any legacy tax which did not become due and payable prior to July 1, 1902, because the calculations and statements contained in the report of the Committee on Ways and Means of the House of Representatives show that revenue from this source was expected to stop on the date of the repeal. See Rep. on Ways and Means H. Rep., House Report No. 320, February 3, 1902, entitled "Repeal of War-Revenue Taxation," 57th Cong., 1 Sess.

Such evidence is competent. *The Delaware,* 161 U. S. 459, 472; *Buttfield* v. *Stranahan,* 192 U. S. 470, 495.

The tax was repealed because the revenue it produced was unnecessary and burdensome, a menace and an impediment to the prosperity of the country; the act declared that the repeal should take effect on July 1, 1902; the committee estimated that there would be no revenue from this source after July 1, 1902. These facts are conclusive.

The "saving clause" in the repealing act does not disclose any purpose to continue this tax.

The period of one year between the death of the testator and the date on which the statute made the tax due and payable coincides with the period ordinarily allowed for presenting and proving claims against the estate; until that period has elapsed and the net value of the estate has been ascertained the interests of legatees and distributees are "contingent beneficial interests" which cannot become absolutely vested in possession or enjoyment within the meaning of the refunding and declaratory act of June 27, 1902. The act of June 27, 1902, was in part a declaratory statute.

The terms necessary to express a different intent were well understood and Congress would have used them and every doubt or ambiguity in the act of June 13, 1898, and amendment acts must be construed in favor of the citizen.

Vol. ccxxviii—14

The intention to tax any subject can never be implied and the expression of the sovereign will to tax must always be set forth with completeness and precision. *Eidman* v. *Martinez*, 184 U. S. 578, 583; *Eidman* v. *Tilghman, supra,* 136 Fed. Rep. 143; *Disston* v. *McClain*, 147 Fed. Rep. 114; *Lynch* v. *Union Trust Co.*, 164 Fed. Rep. 161; Cooley on Taxation, 2d ed., 464.

The cases cited by The Solicitor General can be distinguished.

MR. JUSTICE LURTON delivered the opinion of the court.

This case comes to this court upon a certificate under § 6 of the act of 1891, creating Circuit Courts of Appeals. The action in the Circuit Court was one by the executor and legatees under the will of James F. Woodman, to recover an amount of money which had been paid, under protest, as a tax upon legacies under the will of the testator, by virtue of §§ 29 and 30 of the act of June 13, 1898, and amendments, known as the War Revenue Act.

The facts certified are: That Woodman died at Chicago, March 15, 1902, leaving a will, which was there duly probated on May 3, 1902, and that the Illinois Trust and Savings Bank qualified as executor. The clear value of legacies payable under the will to the defendants in error was $166,250. On January 17, 1905, and before the payment of these legacies, the collector claimed and collected, as the amount of duty and tax due and payable upon said legacies, under the act of Congress before mentioned, the sum of $2,812.49. After stating the facts, substantially as above, the certificate concludes as follows:

"Upon the foregoing facts the question of law concerning which this court desires the instruction and advice of the Supreme Court is this: Does the fact that the testator dies within one year immediately prior to the taking effect of the repealing act of April 12, 1902 (U. S. Comp.

Stat. Supp. 1903, p. 279), relieve from taxation legacies otherwise taxable under sections 29 and 30 of the act of June 13, 1898, as amended by the act of March 2, 1901?"

The form of this certificate has been criticised, but we think it sufficiently states both the question and the desire of that court for the instruction of this court that it may make a proper decision. It conforms, in substance, with the statute, and finds precedence in a number of instances in matter of form. *Helwig* v. *United States*, 188 U. S. 605; *United States* v. *Pridgeon*, 153 U. S. 48; *United States* v. *Ju Toy*, 198 U. S. 253.

It is also urged that the Circuit Court of Appeals for the Seventh Circuit is precluded from requesting the instruction of this court, because it had in two cases theretofore decided the very question now certified. *United States* v. *Marion Trust Co.*, 143 Fed. Rep. 301; *United States* v. *Stephenson*, not yet reported. In both cases the decision was adverse to the contention of the United States. The first was affirmed by this court without opinion, by an evenly divided court, 203 U. S. 594, and, in the second, an application by the United States for a writ of certiorari was denied. 212 U. S. 527. It is further contended that, if not concluded by its own decisions, it was bound to follow the judgments of this court in *Eidman* v. *Tilghman*, affirming the judgment of the Circuit Court of Appeals of the Second Circuit, reported in 136 Fed. Rep. 141, the affirmance by this court being reported in 203 U. S. 580, and similar judgments of affirmance in *Philadelphia Trust Co.* v. *McCoach*, 142 Fed. Rep. 120, and 203 U. S. 539, and *United States* v. *Marion Trust Co.*, *supra*.

All of these cases were affirmances by an equally divided court of the judgments of the court below in favor of the legatees or distributees who had sued to recover taxes paid upon legacies or shares which had passed to the plaintiff within one year after the death of the testator

or intestate, the several lower courts having ruled that the tax had not been saved because it was not due and payable at the time of the repeal of the act under which the tax was claimed.

The Circuit Court of Appeals was obviously not bound to follow its own prior decision. The rule of *stare decisis*, though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided. The court below in this instance, when called upon to reconsider its former construction of the inheritance tax act, found itself confronted by the fact that this court had been equally divided in opinion as to the proper interpretation of the act, and for that reason alone obliged to affirm the ruling of that and other courts against the legality of the tax which had been collected. If the decision of the court under review had been in favor of the legality of the tax an affirmance must likewise have resulted from an equal division. That court also found that its own former view of the act had not been satisfactory to the Circuit Court of Appeals for the Eighth Circuit, which court had decided contrariwise in *Westhus* v. *Union Trust Co.*, 164 Fed. Rep. 795. In such circumstances the court below was not only free to regard the question as one open for determination, but one which might well be certified to this court, that the question of law which had never been authoritatively decided by this court might be so determined by an instruction as to how it should decide the matter when thus presented for reconsideration.

When this court in the exercise of its appellate powers is called upon to decide whether that which has been done in the lower court shall be reversed or affirmed, it is obvious that that which has been done must stand unless reversed by the affirmative action of a majority. It has

therefore been the invariable practice to affirm, without opinion, any judgment or decree which is not decided to be erroneous by a majority of the court sitting in the cause. The earliest precedent is that of *Etting* v. *United States Bank*, 11 Wheat. 59, 78. Chief Justice Marshall said at the conclusion of the opinion: :

"In the very elaborate arguments which have been made at the bar, several cases have been cited which have been attentively considered. No attempt will be made to analyze them, or to decide on their application to the case before us, because the judges are divided respecting it. Consequently, the principles of law which have been argued cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it."

In *Durant* v. *Essex Company*, 7 Wall. 107, 110, Mr. Justice Field, for this court, said, in respect of the effect of the affirmance by a divided court:

"There is nothing in the fact that the judges of this court were divided in opinion upon the question whether the decree should be reversed or not, and, therefore, ordered an affirmance of the decree of the court below. The judgment of affirmance was the judgment of the entire court. The division of opinion between the judges was the reason for the entry of that judgment; but the reason is no part of the judgment itself."

To the same effect are *Westhus.* v. *Union Trust Co.*, 168 Fed. Rep. 617; *Hartman* v. *Greenhow*, 102 U. S. 672, 676. A different rule seems to have been sanctioned in the English courts. *Caiherwood* v. *Caslin*, 13 Meeson & Welby, 261; *Beemish* v. *Beemish*, 9 H. L. Cases, 274.

Under the precedents of this court, and as seems justified by reason as well as by authority, an affirmance by an equally divided court is as between the parties a conclusive determination and adjudication of the matter adjudged, but the principles of law involved not having been agreed upon by a majority of the court sitting

prevents the case from becoming an authority for the
determination of other cases, either in this or in inferior
courts. The affirmance by a divided court in the second
case shows this, for if it was not so the second equal di-
vision could not have happened, for the case would have
been controlled by the first equal division.

We shall therefore proceed to determine the question
of law presented by the certificate of the Circuit Court
of Appeals, feeling free to decide it as our judgments may
dictate.

The statutes involved and requiring consideration are
the twenty-ninth section of the act of June 13, 1898,
c. 448, 30 Stat. at Large, 464; the thirtieth section of the
same act, as amended by § 11 of the act of March 2, 1901,
c. 806, 31 Stat. at Large, 948, and §§ 7, 8 and 11 of the
act of April 12, 1902, c. 500, 32 Stat. at Large, part 1,
page 97 *et seq.* So much of the sections referred to as is
material to the present question is set out in the margin.[1]

---

[1] Section twenty-nine of the act of June 13, 1898, is as follows:

"That any person or persons having in charge or trust, as admin-
istrators, executors, or trustees, any legacies or distributive shares
arising from personal property, where the whole amount of such per-
sonal property as aforesaid shall exceed the sum of ten thousand dol-
lars in actual value, passing, after the passage of this act, from any
person possessed of such property, either by will or by the intestate
laws of any State or Territory, or any personal property or interest
therein, transferred by deed, grant, bargain, sale or gift, made or in-
tended to take effect in possession or enjoyment after the death of the
grantor or bargainor, to any person or persons, or to any body or bodies,
politic or corporate, in trust or otherwise, shall be, and hereby are,
made subject to a duty or tax, to be paid to the United States, as fol-
lows, that is to say: . . ." 30 Stat. 464, chap. 448.

So much of section thirty of the act of June 13, 1898, as amended by
section eleven of the act of March 2, 1901, as is material, reads:

"That the tax or duty aforesaid shall be due and payable in one year
after the death of the testator and shall be a lien and charge upon the
property of every person who may die as aforesaid for twenty years, or
until the same shall, within that period, be duly paid to and dis-

The seventh section of the act of April 12, 1902, which act we shall hereafter refer to as the repealing act, did not go into effect until July 1, 1902. That section explicitly repealed § 29 of the act of June 13, 1898, which was the only section imposing a tax upon inheritances and the only authority for the tax collected from the defendants in error. The claim of the United States was and is that, as the testator's death occurred prior to July 1, 1902, the tax demanded had been imposed as an obligation before the repeal of the taxing section, and that

charged by the United States; and every executor, administrator, or trustee having in charge or trust any legacy or distributive share, as aforesaid, shall give notice thereof, in writing, to the collector or deputy collector of the district where the deceased grantor or bargainor last resided within thirty days after he shall have taken charge of such trust, and every executor, administrator, or trustee, before payment and distribution to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector or deputy collector of the district of which the deceased person was a resident, or in which the property was located in case of nonresidents, the amount of the duty or tax assessed upon such legacy or distributive share," etc.

Sections seven, eight and eleven of the act of April 12, 1902, are as follows:

"Sec. 7. That section four of said act of March second, nineteen hundred and one, and sections six, twelve, eighteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, Schedule A, Schedule B, sections twenty-seven, twenty-eight and twenty-nine of the act of June thirteenth, eighteen hundred and ninety-eight, and all amendments of said sections and schedules be, and the same are hereby, repealed.

"Sec. 8. That all taxes or duties imposed by section twenty-nine of the act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereof, prior to the taking effect of this act, shall be subject, as to lien, charge, collection and otherwise, to the provisions of section thirty of said act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereof, which are hereby continued in force, as follows: . .

"Sec. 11. That this act, except as otherwise specially provided for in the preceding section, shall take effect July first, nineteen hundred and two." 32 Stat. pt. 1, pp. 97, 98, 99; chap. 500.

the liability thus imposed was saved by the eighth section of the repealing act. For convenience that section is here again set out:

"Sec. 8. That all taxes or duties imposed by section twenty-nine of the act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereof, prior to the taking effect of this act shall be subject, as to lien, charge, collection, and otherwise, to the provisions of section thirty of said act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereof, which are hereby continued in force, as follows. . . ."

The question for solution must therefore turn upon the inquiry whether the tax in question had been imposed prior to the going into effect of the repealing act within the intent and effect of the saving clause just set out.

There are cases which go so far as to say that the unqualified repeal of a law as effectually destroys rights and liabilities dependent upon it, not past and concluded, as if the statute had never existed. It is, however, putting it strongly enough to say, that an unqualified repeal operates to destroy inchoate rights, as a release of imperfect obligations and as a remission of penalties and forfeitures dependent upon the destroyed statute. *United States* v. *Reisinger*, 128 U. S. 398; *Curtis* v. *Lovett*, 15 N. Y. 9, 152 et seq.; *Town of Belvidere* v. *Warner. R. R. Co.*, 34 N. J. L. 193; 1 Lewis' Sutherland Stat. Const., §§ 282 *et seq.*

There has been a marked legislative trend in the direction of escaping from the serious consequence sometimes incident to this common-law rule of construction, indicated by general statutes saving liabilities, penalties and forfeitures incurred under repealed statutes. Such a general statute was passed by Congress on February 25, 1871, ch. 71, 16 Stat. 431, the fourth section of which was carried into the revision of 1878 and is now in force as § 13, Rev. Stat. That section reads as follows:

"The repeal of any statute shall not have the effect to

release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.".

This provision has been upheld by this court as a rule of construction applicable, when not otherwise provided, as a general saving clause to be read and construed as a part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress. *United States v. Reisinger,* 128 U. S. 398; *Great Northern Ry. Co.* v. *United States,* 208 U. S. 452.

In the last case cited the court said of this section that—

"As the section of the Revised Statutes in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment. But while this is true the provisions of § 13 are to be treated as if incorporated in and as a part of subsequent enactments, and therefore, under the general principles of construction requiring, if possible, that effect be given to all the parts of a law the section must be enforced unless either by express declaration or necessary implication, arising from the terms of the law, as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of § 13. For the sake of brevity we do not stop to refer to the many cases from state courts of last resort dealing with the operation of general state statutes like unto § 13, Rev. Stat., because we think the views just stated are obvious and their correctness is established by a prior decision of this court concerning that section. *United States* v. *Reisinger,* 128 U. S. 398."

This section is not alone applicable to penalties and for-

feitures under penal statutes. It extends as well to "liabilities," and a liability or obligation to pay a tax imposed under a repealed statute is not only within the letter, but the spirit and purpose of the provision. Therefore we must take that general saving clause into consideration as a part of the legislation involved in the determination of whether a "liability" had been incurred by the imposition of a tax prior to the act that destroyed the law under which it had been imposed.

The repealing act here involved includes a saving clause, and if it necessarily, or by clear implication, conflicts with the general rule declared in § 13, the latest expression of the legislative will must prevail. In the case of *Great Northern Ry. Co.* v. *United States*, cited above, the question was whether the saving clause in the Hepburn act was so plainly in conflict with the rule of construction found in § 13 as to limit the actions or liabilities saved to those enumerated therein, but the court held that as the later clause applied to remedies and procedure, it was not by implication in conflict with the general provision of § 13, which saved penalties, forfeitures and liabilities. 208 U. S. 466, 467.

The significance of § 13 is therefore this: That if prior to the repealing act the defendants in error were under any liability or obligation to pay the tax or duty imposed by § 29 of the act of June 13, 1898, that obligation or liability was not relieved by the mere repeal of that section, nor as a consequence of the saving clause in the repealing act, unless the special character of that clause by plain implication cuts down the scope and operation of the general rule in § 13.

In the light of these principles of interpretation we come then to the question as to whether, at the date of the repeal of § 29 of the act of June 13, 1898, the legacies to the defendants in error were subject to any tax or duty under the repealed section which constituted a "liability" under

§ 13, or to a tax or duty "imposed," under the saving clause of the repealing act.

The only section which imposes any tax upon inherit- ances is the twenty-ninth. Any legacy or distributive share, or gift in anticipation of death, "passing after the passage of the act," is by the express terms of that section "made subject to a duty or tax to be paid to the United States, as follows," etc.

Section 30 of the same act deals only with the re- turn, payment and procedure for the collection of "the tax or duty *aforesaid*," referring to the tax imposed by § 29.

Now, what is the property, right or thing which is made subject to the tax? This has been most conclusively answered by *Knowlton* v. *Moore*, 178 U. S. 41, 56, where the section in question is construed as laying a tax upon the transmission, or the right to succeed to a legacy or dis- tributive share or gift in contemplation of death, passing after the act.

For reasons and upon grounds not necessary to be re- stated it has been also conclusively decided in *Vanderbilt* v. *Eidman*, 196 U. S. 480, that the tax or duty does not attach to legacies or distributive shares until the right of succes- sion becomes an absolute right of immediate possession or enjoyment. It was therefore held in the case cited that a legacy upon conditions which might never happen was not subject to the tax or duty prior to the time, if ever, when the right of possession or enjoyment should become absolute.

To repeat then: The subject of the tax or duty exacted by § 29 is the right of succession which passes by death to a vested beneficial right of possession or enjoyment to a legacy or distributive share.

Upon the facts certified the right of succession which passed by the death of the testator was an absolute right to the immediate possession and enjoyment, a right neither

postponed until the falling in of a life estate, as in *Mason* v. *Sargent*, 104 U. S. 689, nor subject to contingencies, as in *Vanderbilt* v. *Eidman*, *supra*. No further event could make their title more certain nor their possession and enjoyment more secure. The law, then unrepealed and in full force, operated to fasten, at the moment this right of succession passed by death, a liability for the tax imposed upon the passing of every such inheritance or right of succession. The time for scheduling or listing was practically identical with the time for payment, and the listing or scheduling was required to be done by the executor charged with payment, but might be and was postponed for reasons of grace and of convenience. That is almost universal under any taxing system. The liability attaches at some time before the time for payment. But the liability for the payment of the tax exacted under § 29 of the act of June 13, 1898, accrued or arose the moment the right of succession by death passed to the defendants in error, and the occurrence of no other fact or event was essential to the imposition of a liability for the statutory tax upon the interest thus acquired.

Much has been urged because the tax was not "due and payable" when the repealing act took effect, and the contention is that because not "due and payable" no tax had been theretofore imposed within the intent of the saving clause. What we have already said answers this. But let us see the very unreasonable result which would ensue if we are required to say that by "tax or duty imposed under section twenty-nine" Congress meant a tax or duty due and payable when the repealing act should go into effect.

No one questions but that one effect of this saving clause would be to save any such tax as was "due and payable" one year before July 1, 1902. This being so, it would be very unjust if the tax in the latter case is saved and the other remitted, inasmuch as the thing made subject to

the tax would in each case be the same, namely, the trans-mission of a beneficial right to the possession and enjoy-ment of a legacy or distributive share at the death of a testator or intestate. In the one case the tax paid upon the right passing by death would be preserved. In the other a tax upon a like inheritance would be remitted. The only difference would be that in one case the time for payment had arrived, while in the other it had not, though in the later case the ultimate obligation to pay was equally as certain and fixed as in the first case.

Now, did Congress intend to make such an unjust dis-tinction as would result from such an interpretation of the saving clause in question as shall make the time limit for payment the test as to whether one tax shall be preserved and the other remitted in a situation otherwise identical?

The saving clause does not in terms limit the right saved to a tax or duty which should be due and payable at the date of the repeal. It is perhaps an obvious suggestion that if that had been the purpose of Congress, it would have been easy to make that purpose clear.

But in place of saying in so many words that "all taxes or duties which should be due and payable prior to the taking effect of the act" should be subject to the pro-visions of § 30, etc., the Congress said that "all taxes or duties imposed by section twenty-nine," etc., prior to the taking effect of this act, should be subject to the pro-visions of § 30. Now it is to be noticed that this § 30, which is the remedial or procedure section, is not one of the sections repealed. The twenty-ninth section, which alone imposes any tax, is the one which is repealed. The plain purpose of the saving clause was to preserve some liability which had been imposed under § 29, which would otherwise be lost. This it did by providing that all taxes "imposed" prior to the going into effect of the act should, notwithstanding the repeal of the section which originated the tax, be preserved, and as to collection lien, etc., be

subject to the unrepealed § 30. It must also be borne in mind that this time limit for payment to "one year after the death of the testator" came into the thirtieth section only by the amendment of March 2, 1901. Up to the time of that amendment the only provision as to time was that *still* found in the *later parts of the same section*, namely, that "before payment and distribution to the legatees" the executor, administrator or trustee "shall pay to the collector . . . . the amount of the duty or tax assessed upon such legacy or distributive share, and shall also make and render (to the collector) a schedule, list or statement, in duplicate, of the amount of such legacy or distributive share, together with the amount of duty which has accrued, or shall accrue thereon, verified," etc. The same original section also provided that in case of neglect to so pay or deliver the statement required "*within the time hereinbefore provided*," certain penalties should be incurred; and that the collector should make out schedules, etc. This reference to the "time hereinbefore provided" is in the original section, and must, therefore, refer to a time before "payment and distribution" to the legatees and distributees.

It would seem to follow that the purpose and effect of the amendment making such tax "due and payable in one year after the death of the testator," was to advance the time of payment so as to require payment *within one year* if there should be longer delay in paying legacies and distributive shares, leaving in full force the requirement that the tax should be paid before the payment of legacies and distributive shares, if such payment and distribution should be made in less than one year. We have not passed over the fact that this time limit in terms applies only to the tax due under wills and to the uncertainty as to the time for the payment of the tax upon distributive shares. It, however, seems quite obvious that that time limit was intended to apply to shares in intestate estates, as well as

to legacies from testators, and that the omission may be supplied by necessary implication.

It has been suggested that the lien given by § 30 only attaches when the tax is due and payable. The lien was in the section before the amendment, and, in view of its purpose, would attach with the obligation or liability for the tax. There is no reason which would justify the assumption that the lien only attached when the day of payment might arrive, a date most indefinite before the insertion of the time limit by the amendment of 1902.

But it has been urged that any conclusion which saves a tax from the effect of a repealing act which was not actually due and payable is in conflict with *Mason* v. *Sargent,* 104 U. S. 689. That case arose under the inheritance tax law of 1864. The plaintiff's testator died while the law was in force, it having been repealed October 1, 1870. The legacy to the plaintiff, which was in that case held to have been illegally taxed, was one payable after the death of the widow of the testator, which did not occur until 1872, and after the repeal of the law under which the tax was claimed. But that case is distinguishable from this in more than one particular. The legacy sought to be taxed did not vest in possession and enjoyment before the repeal of the act under which it was supposed to be taxable. If, therefore, no taxable succession occurred during the existence of the inheritance tax law of 1864, the right to the tax would fail under the very test which this court in *Vanderbilt* v. *Eidman* made the test of whether a tax had been imposed during the operation of the act of June 13, 1898, and the very test which is applied in the present case.

The precise question here involved, and upon which this case must turn, namely, whether a tax is not at once "imposed," by succeeding to an immediate right of possession and enjoyment, during the operation of the act of June 13, 1898, in such sense as to be within the

intent of the saving clause in the act which repealed that act, was not and could not have been involved in the case cited. The terms, both of the act of 1864, as amended in 1866, and of the act which repealed that act, and of the saving clause in the repealing act, are in some important aspects to be differentiated from the acts here involved. It is enough, however, to say of that case that no taxable succession having occurred before the repeal of the act, there was nothing to save by the saving clause in the repealing act. In the present case it is equally as clear that if no taxable succession actually vested prior to the repeal of the taxing act, no tax would be saved. If, however, there did occur such an absolute right to the possession and enjoyment of the legacies to the present defendants in error as made it subject at once to the imposition of a tax under the law in operation when such succession occurred, a very different question must be decided from any decided in *Mason v. Sargent.*

The conclusion we reach is, that upon the passing by death of a vested right to the immediate possession or enjoyment of a legacy or distributive share, there was imposed the tax or duty exacted upon every such right of succession which was saved by the saving clause of the repealing act.

The question certified must be answered in the *negative.*

MR. JUSTICE McKENNA, with whom concurred THE CHIEF JUSTICE and MR. JUSTICE DAY, dissenting.

I am unable to agree to the judgment of the court. I regret that time does not serve to give adequate expression to my views or to consider opposing ones. Some of the elements of dissent I can only hastily give. The question of the interpretation of a statute is, however, seldom in broad compass. The purpose is to get at the meaning of the words, and fortunately there are well-known rules

to assist the process. The first of these is the motive of the law. Whatever construction advances that carries a presumption of truth.

There must be a strict or liberal construction according to the purpose of the law, the former if it imposes burdens, the latter if it relieves from them. The contentions of the Government, it seems to me, reverse this order. Their consequences seem to me to be: The law is a taxing one, is concededly of doubtful meaning, it must nevertheless be construed against the taxpayer. It was intended to relieve from burdens, its ambiguities must be resolved to retain them.

These contradictions between intention and result are intensified if we consider the general purpose of the law proclaimed at the time of its enactment. It was intended as a repeal of war revenue taxation. In other words, to take from a time of peace burdens laid in a time of war. A worthy purpose, I submit, and based on wisest considerations of governmental policy, and not to be defeated or impaired in any of its details by resolving the uncertainties of language against it.

There was emphatic and illustrative unanimity in the Committee of Ways and Means of the House of Representatives that reported and recommended the law. There was a difference of opinion in the committee as to the extent of the reduction which should be made, resulting from a difference in other views of its members, but there was no difference as to the necessity of a reduction of revenue.

The majority of the committee recommended a reduction of $73,000,000; the minority was of opinion it should be $123,000,000. In the reduction there was a special item of legacies. The figures need no comment. They display the purpose of Congress. Words, however, were added to emphasize it. "Sound business judgment," it was said, "dictates a sweeping reduction of our revenues."

The final word of recommendation of the measure was that "every consideration of prudence commends" its "wisdom." This then was the purpose of the measure, sanctioned by the highest considerations of judgment and wisdom. Should it not prevail, certainly have dominance in the interpretation of the law passed to effect it? Even as to a live and continuing law, the rule of interpretation is that taxes must be expressed in clear and unambiguous language. If there be doubt it is to be resolved against the Government. *Eidman* v. *Martinez*, 184 U. S. 578. Such a rule of interpretation certainly should be applicable to a statute repealing taxation. To what an anomalous contrast does its disregard bring us? Shall a law passed to supply the wants of a deficient treasury have a more restrictive construction than one passed against the burden of a constantly increasing surplus? Indeed, this case presents even a stronger contrast. Under the rule of interpretation announced in *Eidman* v. *Martinez* a law providing for the exigencies of war cannot prevail against the right of the taxpayer to resist taxation, the authority for which is equivocally expressed. But peace legislation, it seems, may claim a more determined power, though it have no necessities but the reduction of revenue, though it proclaims that purpose and is urged to it by governmental policy. It may have a double sense and yet be unfaltering in its exactions, resisting presumptions of law and legal rules, but a war measure may not.

I cannot believe that Congress intended to leave uncertainty, or, if uncertainty should inadvertently result, that it was to be resolved to retain taxes and not abolish them. And it had the means of certainty, and, I must assume, availed itself of them. Prior cases had given it examples of the interpretation of taxing laws—indeed, of the special kind of taxing laws which it was repealing, and we may be sure that it had those examples in mind in fixing the scope of its enactment. And this is in accordance

with a familiar rule of interpretation which this court has applied and necessarily will be called upon to apply again. That is that when provisions which have received judicial interpretation are used in a statute, they are supposed to be used with the meaning that had been given to them. Under any other rule judicial decisions would make "not light but darkness visible."

In *Clapp* v. *Mason*, 94 U. S. 589, a statute passed in 1864 subjected to a tax legacies and successions. Under it a tax was assessed upon certain real estate devised by Mason to his widow for her life, or until she should cease to occupy the same as a place of residence, and upon her death, or ceasing to occupy the same, to Clapp. The widow occupied the real estate until June 17, 1872. Mason, the testator, died December 4, 1867; the tax was assessed on the fifteenth of May, 1873. It was paid on the thirty-first, under protest, to avoid distraint or other forcible process to collect the same.

Under the statute of 1864 the tax would have been a proper one, but by a statute passed July 14, 1870, the tax imposed by the former act was repealed. The repealing clause, however, continued the provisions of former acts levying and collecting all taxes properly assessed or liable to be assessed or accruing under their provisions. It provided also that "any act done, right accrued or penalty incurred under former acts" should be saved.

The collector insisted that the tax upon the succession in question had *accrued* before the repeal of the act of 1864, that is, upon the death of the testator. The devisees contended that it did not *accrue* until they came into possession of the land, and before that occurred, it was asserted, the statute assessing the tax had been repealed.

The court stated the question to be when the right to the tax accrued, "at the death of the testator, or at the death of the widow, when the plaintiff became entitled to the possession of the land?" In answer to the question the

· 228        OCTOBER TERM, 1909.

McKenna, J., The Chief Justice and Day, J., dissenting.  218 U. S.

court conceded that the will of Mason conveyed an estate to William P. Mason and Charles H. Parker, (those who took after the widow,) and that, although they were not entitled to immediate possession, they had a vested estate. And it was conceded that not only vested estates, but those in expectancy, were within the statute. The admission, however, the court said, did not aid them in deciding the point before them, as the question of time still arose, When was the vested estate taxable?

The question was answered by saying, after a consideration of the provisions of the statute, that it would be difficult to carry out its "system in any other manner than by the provision that the succession should not be deemed taxable until such time as the successor should be entitled to its possession." It was further said:

"The act of 1864 contains no statement or intimation that this duty creates any lien upon the land, or that any obligation arises, or that any right accrues at a period earlier than that fixed for the payment of the duty. See sections 133, 137.

\*    \*    \*    \*    \*    \*    \*    \*

"It is manifest that the right does not accrue until the duty can be demanded, that is, when it is made payable; in other words, at the end of thirty days after becoming entitled to possession."

The questions were reëxamined and decided the same way in *Mason* v. *Sargent*, 104 U. S. 689. The latter case, however, exhibits more clearly the applicability of the principles discussed to the case at bar. Mason died December 4, 1867. He bequeathed by his will certain personal property to the plaintiffs in the action in trust for his widow, and upon her death one-half to William P. Mason and one-half to Eliza R. Cabot. The widow died in 1872. In April, 1873, the tax in question was assessed. It was paid under protest and plaintiffs brought the action for the refunding of the tax on the ground that the property

did not vest in possession of the legatees until the death of the testator's widow, which occurred after the repeal of the legacy succession tax act, and that the tax had not accrued so as to come within the saving clause of the act of repeal.

The act of June 30, 1864, c. 173, 13 Stat. 223, 285, subjected legacies and distributive shares of personal property to a tax passing from a decedent, in the hands of an executor or administrator, varying in amount according to the degree of relationship of the beneficiary to the decedent. It further provided that the tax or duty should be payable whenever the party interested in the legacy or shares should become entitled to the possession and enjoyment thereof. The repealing act contained the saving clause which has been already set out.

The collector contended that the tax had accrued when the repealing act took effect, October 1, 1870. The opposing contention was that the tax did not become a claim in favor of the Government until the legacy itself became payable, which was not until after the death of the widow, June 17, 1872. The latter contention was sustained and the tax declared to have been illegally demanded.

It was decided that the legacy was the subject of the tax; that it was exempt during the life of the widow, and only became payable upon her death; that it did "not become a subject of taxation until the right" accrued "to reduce it to possession." The provision of the law which required the trustee to give written notice to the assessor of his trust within thirty days after he should take charge of it was declared "not material to the argument," and that the provision of the act of 1864, that the tax or duty thereby imposed should be a lien or charge upon the property bequeathed for twenty years, or until the same be paid within that period, determined nothing as to the time when the tax accrued.

*Clapp* v. *Mason* was cited as applicable, and the court

concluded as follows: "No right to the payment of the tax had accrued at the date when the repealing act took effect; and, therefore, none to collect it can be deduced from its saving clauses."

*Clapp* v. *Mason* and *Mason* v. *Sargent* were followed as determinative of when, under § 7 of the act of April 12, 1902 (the act now in question), should be regarded as "imposed" in *Eidman* v. *Tilghman* by Circuit Judge Lacombe at circuit, and also by the Circuit Court of Appeals of the Second Circuit. 131 Fed. Rep. 652; 136 Fed. Rep. 141. The judgment was affirmed by this court by an equal division of its members. 203 U. S. 580.

A distinction is made between those cases and that at bar, and there is some distinction in the facts, but not such, in my opinion, as to take this case out of the principle announced in them. They were made to turn upon the fact that the tax or duty was upon the legacy or distributive shares. In this they were applied in *Sturges* v. *United States*, 117 U. S. 363, and followed in *Knowlton* v. *Moore*, 178 U. S. 41, and *Vanderbilt* v. *Eidman*, 196 U. S. 480, in which the act of June 13, 1898, was interpreted. It is said in *Knowlton* v. *Moore*, "that the provisions of the act of 1864 were in mind when" the act of June 13, 1898, was drafted. The cases of *Clapp* v. *Mason* and *Mason* v. *Sargent* were decided when that act was drafted. Is it not a fair inference that it and its repealing act were intended to have the same meaning and interpretation which had been given to its prototype and its repealing act?

Those cases were also made to turn on the fact that as the tax was upon the legacy or distributive share, there could be no tax nor claim in favor of the Government until such legacy or share was vested in the possession and enjoyment of the legatee or distributee. In this again they were followed in *Vanderbilt* v. *Eidman*. And, it seems to me, therefore, that there is such resemblance of the provisions of the act of 1864 to those of the act of

June 13, 1898, as to make the cases interpreting the former decisive precedents of the meaning of the latter.

The time of payment is in both acts at a date subsequent to the death of the testator.  In the act of 1898, one year after his death; in the act of 1864, when the legacy came into possession and enjoyment.  This difference in time can make no difference with the principle that the tax does not accrue, until it becomes due and payable.  And, I submit is not "imposed" until then, does not become a claim in favor of the Government until then, and not being such is not saved by § 8 of the repealing act.  The lien does not attach until then.  By § 30 of the act of 1898 the tax is due one year after the death of the testator, and is secured by a lien, but when the lien attaches is not stated.  There is the same silence in the act of 1864.  The omission was supplied by *Mason* v. *Sargent,* which declared that the lien presupposed the existence of the tax and only attached when the tax accrued.  This must also be the meaning of § 30, and we have a further parallel between the acts completing the application of the cited cases.  Mark, too, the words of § 8 of the repealing act, associating the tax and the lien, showing how closely the legislative mind followed the judicial decisions and gave its legislation, as I think, the certain meaning that the interpretation of the prior enactments afforded.  Section 8 provides as follows: "That all taxes or duties imposed by section 29  .  .  .   shall be subject as to lien, charge, collection and otherwise to the provisions of section 30.  .  .  ."

An argument is made to show that a tax may be said to be imposed, though it be not due and payable.  The argument is answered, I think, by what I have said.  A tax is not imposed by a mere provision for it.  Illustrations of this will readily come to mind besides those afforded by the cited cases.  However, I will not attempt to further review the contentions of the Government or the opposing

ones, nor consider from which the greater embarrassments, if any, will result. The force of the conflicting contentions, and of course they have force, establish the ambiguity of the statute and the different meanings that can be ascribed to it. In such situation the rule of interpretation which I have announced and which I have shown is sanctioned by this court, should turn decision against the tax. I will not quote the Circuit Courts and the Circuit Courts of Appeal, which have so thought and have pronounced against the Government. They make a body of authority, persuasive in their numbers and rank. And this court has divided in opinion. I do not mention the fact as a circumstance which should preclude consideration of the question, but I bring it forward as an element of some power in the discussion. It may not have the "true, fixed and resting quality" of *stare decisis*, but it has nevertheless strong appeal and persuasion. It has persisted through quite a period of time and against many attempts to disturb it. It is certainly something more patent than inaction. It gave authority to the decision of the Circuit Court of Appeals in *Eidman* v. *Tilghman*, and that again determined other judgments and became a rule of decision for the settlement of estates.

I think the question certified should be answered in the affirmative.

I am authorized to say that The Chief Justice and Mr. Justice Day concur in this dissent.