**UNION TRUST CO. OF PITTSBURGH, PA., v. HEINER, Collector of Internal Revenue.**

District Court, W. D. Pennsylvania.    January 24, 1927.

No. 3490.

1. **Internal revenue** ⊜⟶8(13)—**Mortuary tables held improperly used to determine value of life estate of widow, surviving husband only few hours, in computing estate tax (Revenue Act 1918 [40 Stat. 1057]; Revenue Act 1921, § 403 [Comp. St. § 6336¾d]).**

Where widow died within 12 hours after husband's death, Commissioner of Internal Revenue incorrectly used mortuary tables to ascertain value of her life estate in computing estate tax, whether under Revenue Act 1918 (40 Stat. 1057) or Revenue Act 1921 (42 Stat. 227), both of which impose tax on transfer of net estate determined by Revenue Act 1921, § 403 (Comp. St. § 6336¾d).

2. **Internal revenue** ⊜⟶8(16)—**Transfer tax is levied on interest ceasing on death, not that to which another succeeds (Revenue Act 1918 [40 Stat. 1057]; Revenue Act 1921 [42 Stat. 227]).**

Transfer tax, under Revenue Act 1918 (40 Stat. 1057), and Revenue Act 1921 (42 St. 227), is not levied on interest to which some person succeeds on death of another but on interest which ceased by reason of death,

and net value of estate subject thereto must be determined on facts of particular case.

3. **Internal revenue** ⊜⟶8(15)—**Declining corporation's stock not sold in open market, at time of owner's death, held intrinsically worth only $110 per share, admitted by executor, seeking refund of estate taxes.**

$110 per share, which executor, seeking refund of estate taxes paid, admitted was value of stock held by deceased in corporation losing money at time of his death, not $140 per share fixed by government, *held* intrinsic worth of stock, of which no sales were made in open market, at such time.

At Law. Action by the Union Trust Company of Pittsburgh, Pa., executor of the last will and testament of Samuel T. Owens, Jr., deceased, against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for plaintiff.

Jas. Walton, of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty. of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. This is an action at law by the Union Trust Company of Pittsburgh, Pa., executor of the last will and testament of Samuel T. Owens, Jr., late of Pittsburgh, Pa. against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania, to recover $1,906.61, with interest and costs. A jury trial being waived, the case was tried before the court without a jury.

### Findings of Fact.

The court finds the following facts:

Samuel T. Owens, Jr., died on March 21, 1921, a resident of Pittsburgh. His last will and testament were duly admitted to probate, and letters testamentary issued to the plaintiff, which qualified. On or about March 22, 1922, the plaintiff, as executor, filed with the defendant on form 706, a return for federal estate taxes which indicated no federal tax liability. Later on, after examining the books and records of the decedent, the Commissioner of Internal Revenue found a tax liability of $2,865.91, and made demand upon the plaintiff for payment of that amount. Thereupon the plaintiff, as executor, filed a claim for abatement of the entire amount. The Commissioner, upon review, then made a recomputation, finding the correct amount of tax to be $1,946.-72. Thereafter, upon notice and demand from the collector, the plaintiff, as such executor, on December 12, 1923, paid said tax to the amount of $1,946.72, plus $71.47 as

interest, or a total amount of $2,018.19. Then, on March 8, 1926, the plaintiff duly filed a claim for refund of said sum of $2,018.19, which claim the Commissioner of Internal Revenue allowed to the extent of $111.28, and rejected in the sum of $1,906.91, for which the plaintiff brings this suit.

The decedent, by his last will and testament, bequeathed four-fifths of the residue of his estate to charity, subject to a prior life estate in his wife. The widow died within 12 hours after the death of the decedent. The Commissioner of Internal Revenue, in computing the estate subject to tax under the law, has reduced the amount of charitable bequests to a present worth basis as of the date of the decedent's death, based on the theoretical life expectancy of the widow, using for the purpose of such computation the American Mortuary Tables. The net amount bequeathed to charity, subject to the prior life estate of his widow, was $204,078.52. By his computation the Commissioner reduced this amount to $79,-582.46, thereby increasing the amount of net estate subject to tax to $124,496.06. In computing the amount of tax liability, the Commissioner also valued certain stock owned by the decedent in the Dilworth-Porter Company at $140 per share. The court finds, as a matter of fact, that the life estate of the widow has no value whatever in the instant case, and that the fair market value of the stock of the Dilworth-Porter Company was not in excess of $110 at the time of the death of the decedent.

## Conclusions of Law.

The court therefore concludes, as a matter of law, that the Commissioner was in error in deducting from the net amount of the estate bequeathed to certain charities the present worth of the life estate of Nancy Owens, the widow, computed on the basis of the mortuary tables, and finds that in view of the almost immediate death of the widow there should have been no deduction whatever made from the charitable bequests on account of the life estate of the widow, that the plaintiff should recover from the defendant the amount of tax paid by reason of this computation of tax due from the decedent's estate, that the computation of the net estate subject to tax should have been made on the basis of the value of stock of the Dilworth-Porter Company at $110 per share, instead of $140 per share, and that the plaintiff is entitled to recover from

the defendant the amount of tax computed on this valuation.

## Discussion.

[1] The plaintiff attributes tax liability in this matter to the Revenue Act of 1921 (42 Stat. 227, c. 136); the defendant to the Revenue Act of 1918 (40 Stat. 1057). For the purpose of this case, it is immaterial which statute is involved; the result is the same. The tax imposed by both of these acts is upon "the transfer of the net estate of every decedent dying after the passage of this act." The net estate is determined by section 403 of the act (Comp. St. § 6336¾d), which provides, among other things, that from the value of the gross estate there is to be deducted legacies, devises, or gifts for certain purposes and certain charitable uses.

As we view the law, the Commissioner incorrectly made use of the Mortuary Tables in the instant case, for the reason that there is no need to resort to any theoretical table for the purpose of ascertaining the value of the life estate of the widow. It practically had no value. The widow died within 12 hours after her husband. It is very doubtful whether, so far as she is concerned, any of the estate vested in her, because it was all personal property, and would naturally go to the executors first for administrative purposes. The taxing act in question manifestly assumes that the net estate will be ascertained before the tax is computed, and in the instant case, where the life estate of the widow ended prior to the determination of the amount of the tax, only the actual, and not the theoretical, value of the life estate should enter into the computation. Here the life estate of the widow had no value, and should not, therefore, be considered as a factor in computing the tax.

The Circuit Court of Appeals of this circuit has held that, although the mortuary tables may be resorted to in ascertaining the value of a life estate where the life tenant is living, the value of such estate should, where the life tenant is not living, be based upon the actual duration of the tenant's life, and not upon a fictitious duration derived from such tables, where he has died before the assessment, and even though his death is unknown when the assessment is made. Herold v. Kahn, 159 F. 608. That is even a stronger case than the instant one, where the assessment was not made until after the death of the life tenant, and there was no necessity of computing the value of her estate until after she had died.

The government calls attention to the case of Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001, and the case of United States v. Farr's Executor (D. C.) 196 F. 996, as determining that the life estate of the widow vested at the time of decedent's death and passed to her in possession and enjoyment at that time. But we do not think that these cases have any bearing in the instant case. The Supreme Court, in the case of United States v. Jones, 236 U. S. 106, 35 S. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316, commented upon the case of Hertz v. Woodman supra, holding that the only question decided in that case was that death of the testator within the year immediately prior to the taking of effect of the act of 1902 (32 Stat. 97, 406) did not relieve from taxation the legacies otherwise taxable under the act of 1898 (30 Stat. 448), as amended by the act of 1901 (31 Stat. 938). It may further be noted that the case of Hertz v. Woodman also had reference to a legacy tax, and not to a tax against the net estate of the decedent.

[2] As indicated by the Supreme Court in the case of Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564, the transfer tax is not levied upon the interest to which some person succeeds on a death, but upon the interest which ceased by reason of the death, and clearly points out that the amount is not to be ascertained by "any algebraic formula." This case further points out that the express intent of the statute is to encourage charitable bequests, and that it would be inconsistent with that intention to make a theoretical calculation of the tax involved.

The net value of each estate subject to this transfer tax must be determined upon its own facts, and there is not any algebraic formula or yardstick which will accurately measure every estate in determining its net worth subject to taxation. It would be manifestly unfair and unjust to use a theoretical life for the purpose of determining the value of this life estate, which lasted only for 12 hours, and when the actual determination of the life in question came to an end before the actual computation of the net estate subject to tax required by the taxing laws.

[3] Next, as to the value of the Dilworth-Porter stock, there were no sales in the open market of this stock, and it is only a question of determining the intrinsic worth of the stock. Taking all factors into consideration, we conclude that the government is altogether too high in placing the value of this stock at $140 per share. The company had come to the crest of its operation; it was on the decline; it was beginning to lose money at the time of the death of the decedent; and we believe that the value admitted by the plaintiff was not in excess of the value of the stock in question, and was its intrinsic worth at the time of the decedent's death.

An order may be submitted for the entry of judgment in accordance with this opinion.