TENNESSEE CONSOLIDATED COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103114. Promulgated May 5, 1942.

*George E. H. Goodner, Esq.*, for the petitioner.
*William V. Crosswhite, Esq.*, and *George H. Mitchell, Esq.*, for the respondent.

1038

## OPINION.

OPPER: The conclusions of fact set out in our findings dispose of all the disputed issues of fact. As the findings show, these are that petitioner passed on the burden of the tax with respect to some of its sales of the products upon which an excise tax was imposed but not paid and that with respect to others the tax was not passed on.

In arriving at this ultimate finding, we have relied upon the rules for evaluating evidence established by subsections 501 (e) and (i).

By subdivision (e) a presumption of the existence and amount of the tax shift is created and by subdivision (i) provision is made for the introduction of evidence by which the presumption may be rebutted. Petitioner concedes that under the presumption there is shown to have been a passing on to others of the tax burden in the amount of $3,346.15. It claims, however, that the affirmative evidence suffices to rebut it. We think this is true as to certain of petitioner's sales. These were to customers with whom contracts had been made prior to the imposition of the excise tax but containing the language "Any increase or decrease in the cost of production caused by the imposition * * * of a direct tax on coal or on the sale thereof * * * shall correspondingly increase * * * said price." Petitioner endeavored to collect the additional amount from these contract customers but in most cases was unsuccessful. As to them, therefore, it did not succeed in shifting the tax burden and the presumption has been rebutted. See *Cones & Son Manufacturing Co.* v. *United States* (C. C. A., 7th Cir.), 123 Fed. (2d) 530.

In other instances, however, the evidence shows that the price of petitioner's product was increased by an amount exceeding the tax at about the time the tax liability arose, an increase which at least in certain instances was canceled at about the time the tax disappeared. This is evidence expressly made available to the respondent to demonstrate a shift of the tax burden. The delicate question of the precise legal effect of a presumption upon the weighing of evidence is accordingly absent here. See *Heiner* v. *Donnan*, 285 U. S. 312. For whether we say that petitioner has failed to overcome the presumption in respondent's favor by its affirmative evidence; or that the presumption disappeared upon the introduction of evidence of the true facts, but that respondent's burden of going forward has been sustained by evidence tending to show that the tax burden was passed on; the conclusion is the same. On either hypothesis the ultimate effect of the record is that in certain cases petitioner shifted to its customers the burden of the excise tax upon the commodities sold and that accordingly it failed to bear it.

There is no evidence of any adequate increase in petitioner's costs or other showing that the rise in price did not include a shifting of the tax burden. *Honorbilt Products, Inc.* v. *Commissioner* (C. C. A., 3d Cir.), 119 Fed. (2d) 797. It is contended that the increase in price was due solely to a rise in labor costs. But, as our findings show, the evidence fails to bear this out. Petitioner, to be sure, insists that the tax was not considered when the increase took place and concludes that this constitutes persuasive evidence of a failure to pass the tax on. But if the facts show that the burden was

shifted, it is of no consequence what was petitioner's purpose or that it did not pass the tax on intentionally. "We are of the view, however, that plaintiff's intention or motive is immaterial. Certainly it is not controlling. The question at issue must be determined on the basis of what was actually done." See *Cones & Son Manufacturing Co.* v. *United States, supra; Honorbilt Products, Inc.* v. *Commissioner, supra; Arden-Rayshine Co.*, 43 B. T. A. 314.

Petitioner's claim that the statute is unconstitutional can not be sustained. *Anniston Manufacturing Co.* v. *Davis*, 301 U. S. 337; *Sportswear Hosiery Mills*, 44 B. T. A. 1026.

The remaining question is whether the period to be covered ended May 18, 1936, when the Guffey tax was held to be invalid in the *Carter* case, or on the prior March 31, on the theory that no payment was due under the invalidated excise until the first day of the second month following, and therefore no tax was ever accrued from April 1 on.

The description supplied by the statute of the tax to which the unjust enrichment levy relates is an "* * * excise tax * * * imposed * * * but not paid." Revenue Act of 1936, sec. 501 (a) (1). It seems to follow that the question narrows to whether the Guffey tax was "imposed" during the period from April 1 to May 18 within the intent of that section. Since a tax may be "imposed" without being immediately payable or subject to collection, *Hertz* v. *Woodman*, 218 U. S. 205, the use of that word does not denote a legislative purpose to exclude the period in question merely because the tax was not then due. On the other hand, the general objective of the provision and its meager legislative history indicate that the intention was to include all taxes which might have been collected from others but not handed on to the Treasury, thus remaining as an unearned benefit in the hands of the supposed taxpayer.

That the purpose of the legislation under review is to recapture the principal portion of a taxpayer's income which can be thought of as unjust enrichment can not well be questioned. The principle is that if he collects the amount of an excise tax from some other person, as for example his customer, and in addition escapes payment of the tax, he has been unjustly enriched to the extent of his collection. The converse situation, where a taxpayer is refused refund of a tax already paid because the burden has been shifted, is thus described by Mr. Chief Justice Hughes in *Anniston Manufacturing Co.* v. *Davis, supra:* "While the taxpayer was undoubtedly hurt when he paid the tax, if he has obtained relief through the shifting of its burden, he is no longer in a position to claim an actual injury * * *."

The present situation could not, of course, arise under the circumstances so considered; for the tax being as yet uncollectible there would ordinarily have been no payment to the fiscal authorities for which an application of refund could be made. That a similar principle exists, however, is clear from the discussion by sponsors of the bill on the floor of the House of Representatives in the course of its consideration by that body. For example, Congressman Hill, a Member of the Ways and Means Committee, stated: "Under the processing taxes, which the Supreme Court invalidated, a burden was placed upon commodities which the processor either did not pay or had refunded to him, but at the same time passed the burden on to his customer. This is an unjust enrichment, a straight-out bonus, and we propose to tax that 80 percent * * *." 80 Cong. Rec. 6005. Congressman Cooper, also a member of the Committee, commented: "* * * The ideal we had before us was that no man in this country should be enriched by one penny by reason of collecting this tax and passing it on to his customers and failing to pay it to the Government * * *." 80 Cong. Rec. 6094.

From the facts as we have found them, it is apparent that the situation so described existed here as clearly during the period from April 1 to May 18 as it had during the preceding months. There is no suggestion that either of the operative conditions, collection of the tax from customers and failure to pay the Government, were any the less effective then than they had been previously and without the gift of prophetic discernment it is difficult to see that the fact could have been otherwise; for, although it might possibly have been anticipated that the *Carter* case would be decided as it was, it was wholly impossible to forecast the date when that would take place. And if it is true that the decision when rendered was retroactive in the sense of invalidating the tax on coal from its inception, that was no more true of the period after April 1 than of the prior months. The result is that the legislative purpose could be achieved in full only by an application of the tax on unjust enrichment for a period coinciding with collection, on the one hand, and failure to pay, on the other, and that that is what the provisions of section 501 (a) (1) effectively accomplished. We conclude that petitioner is taxable for the full amount of the excise taxes, the burden of which it passed on until May 18 and which it did not pay.

*Decision will be entered under Rule 50.*