BEELAND WHOLESALE CO. et al. v.
DAVIS, Collector of Internal
Revenue.*

ALPHA PORTLAND CEMENT CO. et al. v.
SAME.

Nos. 909, 911.

District Court, N. D. Alabama, S. D.

Jan. 14, 1937.

Martin, Turner & McWhorter, of Birmingham, Ala., for plaintiffs Beeland Wholesale Co. and others.

Cabaniss & Johnston, of Birmingham, Ala., Benners, Burr, McKamy & Forman, of Birmingham, Ala., and Knox, Acker, Sterne & Liles, of Anniston, Ala., for plaintiffs Alpha Portland Cement Co. and others.

Jim C. Smith, U. S. Atty., for the Northern Dist. of Alabama, of Birmingham, Ala., and Thomas G. Carney, of Washington, D. C., for defendant.

DAVIS, District Judge.

These are suits by the Beeland Wholesale Company and the Alpha Portland Cement Company, a corporation, and a number of others, against Harwell G. Davis, individually and as collector of internal revenue, seeking a temporary injunction enjoining the defendant, Harwell G. Davis, as collector, from collecting the taxes due under title 9 of the Federal Social Security Act (sections 901–910 [42 U.S.C.A. §§ 1101–1110]), hereinafter designated as the Federal Act, and a declaratory judgment declaring titles 3 and 9 of said Federal Act (sections 301–303, 901–910 [42 U.S.C.A. §§ 501–503, 1101–1110]) unconstitutional and void.

Complainants take the position that, first, titles 3 and 9 of the Federal Act are unconstitutional and that there are such extraordinary circumstances in this case that Rev.Stat. § 3224 (26 U.S.C.A. § 1543) does not apply; second, that, assuming title 9 is constitutional, the independent equities of this case are such that they entitle complainants to an injunction.

The government takes the position that the Federal Act is constitutional and that there are no extraordinary circumstances in this case that prevent the application of section 3224.

I am unable to agree that title 9 of the Federal Act is unconstitutional. The most strict constructionist would not deny that Congress has the power under the General Welfare Clause of the Constitution (article 1, § 8, cl. 1) to levy and collect an excise tax such as is prescribed in title 9 of said act. For the last five or six years, many people have been unemployed, at the peak some twelve to fifteen million. This unemployment reached every

*Judgment affirmed 88 F.(2d) 447.

nook and corner of the nation. Few, if any, individuals or business escaped its ravaging effects. The revenues of cities, towns, counties, states, and even of the federal government were severely reduced. Many people were hungry. The feeling of unrest was alarming. Some of us who were more sheltered than others may not fully realize the extent of that feeling. The calamity was national in scope. To relieve the situation, the federal government spent billions of dollars. Can it with reason be said that the Congress cannot levy an excise tax on the privilege of employing others to aid in prevention of a recurrence of such a calamity and the alleviation of its hardships should it come again? If the Congress cannot do this, then it is difficult to conceive of any tax that could be levied for the general welfare, and it seems that the General Welfare Clause of the Constitution would be made absolutely meaningless. It has been definitely determined that the Congress can levy a tax for the general welfare.

■ The complainants, however, contend that the levy of this tax under title 9 of the Federal Act is a mere incident to a scheme to coerce the states into adopting a system of unemployment compensation, a matter solely within the powers of the states, in violation of the Tenth Amendment. This matter has been concluded against the contention of the complainants by the decision in the case of State of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511. In the Florida Case, the Congress had passed an act levying an inheritance tax. Later on, the act was amended to give residents of states adopting inheritance tax laws a credit for such amount of inheritance tax as was paid under such a state law, up to 80 per cent. of the federal inheritance tax. It was argued by the state of Florida that this credit plan constituted an invasion of the sovereign rights of the states and was a direct effort on the part of the Congress to coerce the states into adopting an inheritance tax and to penalize their property and citizens' for the states' failure to do so. Notwithstanding this argument, the court held the tax constitutional.

In the case at bar, the Congress levied an excise tax upon the privilege of employing others, and, as in the Florida Case, extended the privilege of receiving a credit for the amount of unemployment compensation taxes paid a state, up to 90 per cent.

of the federal tax, to the citizens of any state that had adopted an unemployment compensation law as provided in the Federal Act. The extending of the privilege did not amount to unconstitutional coercion of the states in the Florida Case and any interference it had with the exercise by the states of their sovereign powers of taxation was not a contingency which could afford grounds for judicial relief. No more does the extension of the privilege amount to coercion in this case.

This view is substantiated by the conclusions of law in the decision (in manuscript) of the federal statutory three-judge court in the case of Gulf States Paper Co. v. Albert H. Carmichael et al., 17 F.Supp. 225, in the United States District Court for the Middle District of Alabama.

The complainants rely on the cases of United States v. Butler, 297 U.S. 1, 56 S. Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and Carter Coal Co. v. Carter, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. In the Butler Case, the court decided that the processing tax therein involved was merely an incident of an unconstitutional plan to regulate agriculture, a matter solely within the power of the states, in violation of the Tenth Amendment, by using economic coercion or alternatively financial inducement to make individual farmers contract for the regulation of agricultural production. In the Carter Case, the court decided that the purported 15 per cent. tax therein involved was in fact a penalty used by the federal government for the purpose of regulating the wages and hours of coal companies' employees, which were purely state matters. There it was not asserted that the validity of the regulation was based on the taxing power of Congress, but it was contended that the admitted regulation could be sustained under the federal power over interstate commerce.

In neither of the two latter cases was the Florida Case overruled or even discussed.

■ The complainants further contend that, assuming that the Federal Act is constitutional, they are entitled to an order restraining the collection of the tax under title 9 of the Federal Act until they can test the constitutionality of the Alabama Unemployment Compensation Law (Gen. Acts Ala.1935, p. 950, as amended, Gen. Acts 1936, Ex.Sess. pp. 176, 225, 228), hereinafter called the State Act, enacted by the Alabama Legislature and approved by

the Federal Social Security Board as complying with the Federal Act. As constituting the special equity of their position, the complainants say that the State Act is unconstitutional. They filed a bill in the United States District Court for the Middle District of Alabama which was heard by a federal statutory three-judge court (Gulf States Paper Co. v. Carmichael, 17 F.Supp. 225). The three-judge court enjoined the state authorities from collecting the state tax upon the condition that the tax be paid into the registry of the court, to be paid to the Alabama authorities should the State Act be ultimately held constitutional.

The complainants contend that to deny a restraining order in this case would be to subject them to an unreasonable penalty in that they would (a) have to pay the tax under the Federal Act and if the State Act is held constitutional, they will then have to pay the state tax and will be deprived of the 90 per cent. credit on the federal tax because the constitutionality of the State Act cannot be finally determined until after the date by which the right to the credit must have been established by the payment of the state tax; (b) that in order to avoid this heavy penalty they will have to abandon their right to test the constitutionality of the State Act.

I am of the opinion that, the federal tax being legal, this court has no authority to enjoin the collector of internal revenue from assessing and collecting same. No case has been cited and the court has found none in which an injunction was issued against the collection of a legal federal tax properly applied.

Aside from that, however, it does not appear that the complainants would be injured as claimed. The complainants are liable for a minimum of a 1 per cent. tax on their pay rolls. This they owe under the Federal Act and they can, whether the State Act is constitutional or not, pay the amount due the state under the State Act thereby obtain an irrevocable credit for this payment against their liability under the Federal Act, up to 90 per cent. thereof. This is a fair construction of the Federal Act and the complainants in their brief state, "In its (the State Act's) exact details it is approved for the credit by the Social Security Board under the color of the Act. The collector will accept that approval as final." (Parenthesis inserted.) By paying the state tax and getting a credit on the federal tax up to 90 per cent. thereof and by paying the 10 per cent. then due under the Federal Act, complainants will be relieved of all obligations under both the Federal and State Acts and will not have paid more than the 1 per cent. pay roll tax legally provided for the title 9 of the Federal Act. This amount they have to pay whether the State Act is constitutional or unconstitutional. By following this procedure, they will not be financially injured.

The complainants claim that by doing this, however, they would voluntarily assent to the constitutionality of the State Act and could not then proceed to test it. Under the very broad provisions of the Alabama Declaratory Judgment Act, section 7881 (1) et seq., 1936 Cum.Supp. to Ala.Code of 1928, Michie, they could have obtained at any time after the state tax began to accrue and can now obtain a decision by the Supreme Court of Alabama upon the constitutionality of the State Act. Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Borchard, Declaratory Judgments, p. 558. The mere fact that they have voluntarily chosen another method of testing the constitutionality of the State Act whereby they put themselves in the position of losing the 90 per cent. credit against the liability under the Federal Act, rather than a method which would give them the credit and also allow an opportunity to test the constitutionality of the State Act, does not justify this court in restraining the collection of a legal federal tax.

A decree will, therefore, be prepared denying the prayer for the temporary injunction and dismissing the bill.