INSULAR BOARD OF ELECTIONS OF PUERTO RICO ET AL., Petitioners, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 9. Argued May 31, 1944.—Decided June 21, 1944.

---

*Jesús A. González, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for petitioners. *Celestino Iriarte, F. Fernández Cuyar, H. González Blanes,* and *M. Cruz Horta* for Progressive Union Republican Party. *Emilio S. Belaval, pro se,* for respondent. *Samuel R. Quiñones* and *Miguel Guerra-Mondragón* for intervener Luisa Boix.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

On April 12, 1944, Luisa Boix Domínguez and 2,585 other persons, filed in the District Court of San Juan a petition for a writ of mandamus against the Insular Board of Elections of Puerto Rico and against the General Supervisor of Elections of Puerto Rico, ordering the former to immediately include the plaintiffs in the register of voters, and directing the latter, pursuant to § 27 of the Election Law, to send to the persons mentioned in said Act, and keep in the file of the Board, copies of the list prepared by him, containing the names of the plaintiffs and other information that should appear in the voters' lists. On April 14 Judge

Massari issued the alternative writ, and set May 2 for the hearing. Prior to this last-mentioned date, Mr. Belaval, Judge of the District Court of Bayamón, was appointed Special Judge of the District Court of San Juan in substitution of Judge Massari,[1] and on said May 2 the parties appeared before the court, Judge Belaval presiding. The defendants filed their answer alleging, among others, the plea of *res judicata,* and at the same time a motion for intervention was filed on that day by the Union Republican Party.

The motion for intervention having been argued, the same was granted on May 3, and the intervener was allowed to file its answer opposing the petition for mandamus. In this answer the plea of *res judicata* was also raised. On motion of all the parties, the court granted them a term of three days within which to file their briefs in connection with the plea of *res judicata,* and ordered that the case be continued on May 9, at 2:00 p. m. On that date the intervener filed a motion praying that Judge Belaval be disqualified to sit in the case and that the cause be transferred to the three other judges of the District Court of San Juan in order that they should hear the case in bank. At the commencement of the hearing on May 9, the intervener asked the court to hear the motion for disqualification to act. At first the court refused, but finally it consented and denied the same without allowing the intervener to adduce the evidence which it insistently offered in support of its motion. Then the defendants and the intervener alleged that they had to introduce evidence in support of their plea of *res judicata,* and the court, over plaintiffs' objection, consented, it being agreed by the parties as well as by the lower court, that such evidence was offered solely in connection with the plea of *res judicata.* After said

---

[1] Mr. Massari, in his capacity as district judge at large, was Acting Judge of the District Court of San Juan, in substitution of Judge Jorge L. Córdova, who was on leave. Judge Massari was transferred to a district court of the Island, and Judge Belaval of the District Court of Bayamón was appointed to substitute him in the District Court of San Juan.

evidence had been introduced and the briefs arguing the plea of *res judicata* filed, the lower court in a lengthy opinion not only considered the questions of *res judicata*, but also decided the case on its merits, and issued the writ of mandamus. In order to review the refusal of the lower court to grant the motion for disqualification, the denial of the plea of *res judicata*, and the issuance of the peremptory writ under the foregoing conditions, on motion of the Insular Board of Elections and of the Progressive Union Republican Party— as the Union Republican Party is now called—we issued this writ of certiorari pursuant to Act No. 32 of 1943. (Laws of 1943, p. 84).

■ On the day set for the hearing, the respondent judge appeared for himself, and filed his answer as well as a motion praying this court to admit the evidence that the Union Republican Party had offered in the lower court to support its motion for disqualification. However, since this court is of the opinion that within the certiorari proceeding herein it lacks jurisdiction to hear the evidence which should have been originally introduced at the lower court, respondent's motion was denied.

■ Immediately thereafter, Luisa Boix Domínguez *et al.*—petitioners in the mandamus proceeding in the lower court—asked leave to intervene in this case, and upon their motion being granted, filed an answer in opposition to the claim of petitioners herein.

Taking the questions in their logical order, we must first determine whether or not the respondent court erred in denying the motion for disqualification, without giving the Union Republican Party an opportunity to adduce its evidence.

Obviously, this motion charges Judge Belaval with partiality in favor of the plaintiffs in the mandamus proceeding. It sets forth that Governor Tugwell is acting as a conspicuous leader of the Popular Democratic Party, of which Luisa Boix Domínguez and her coplaintiffs in the mandamus proceeding

are members; that the Governor is interested in the outcome of this suit in favor of the plaintiffs and for that purpose has unnecessarily changed judges, thus assigning Judge Belaval, also an alleged member of the Popular Democratic Party, to hear and decide the mandamus proceeding; that the means used by the Governor to bribe Judge Belaval was by "secretly offering a promotion as judge, which promises were accepted, there actually existing a formal agreement that when Mr. Jorge Luis Córdova should cease in his office as Judge of the District Court of San Juan, Judge Belaval would be appointed to fill the vacancy."

Judge Belaval himself understood that in said motion for disqualification he was charged with accepting a bribe, and to that effect, in paragraph "e" of the motion filed in this court praying that the evidence concerning the disqualification be heard, he stated as follows:

"That in order to avoid further public comment on the facts involved in the alleged bribe accepted by this judge in exchange for a favorable decision on behalf of the petitioners in the proceeding appealed from, it would be advisable to hear in this court all the evidence which would prove the serious charges or would exonerate this judge from said accusation."

Later on, when this motion was argued orally, the respondent judge asserted that every person who read the motion for disqualification would necessarily reach his own conclusion, to the effect that he was charged with having been bribed.

In the case of *Peña* v. *García,* 45 P.R.R. 42, 44, 46, 50, a careful study is made of our statute in this jurisdiction dealing with bias or prejudice on the part of the judges. It was said therein:

"Bias or prejudice on the part of the judge against any of the litigants is not included in the aforesaid section. [Sec. 23, Code of Civil Procedure.] However, the intention clearly appears that the judge should be a person completely disinterested, free of ties and relations that might affect the sober and serene balance of judicial

discretion. Section 170 of the California Code of Civil Procedure has a subdivision covering cases of bias or prejudice on the part of the judge. In accordance with said subdivision, which has not been included in our section 23, when it appers from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge of a court about to try the case, by reason of the prejudice or bias of such judge, said judge shall forthwith secure the services of some other judge, of the same or another county, to preside at the trial of said action or proceeding. Such affidavit must be served upon the adverse party of the attorney for such party at least one day before the day set for the trial of the case; provided, counter affidavits may be filed at least one day thereafter, or such furthertime as the court may direct, not exceeding five days.

"Such is the difference existing between section 23 of our code. and section 170 of the California Code. The former, prescribes the cases in which a judge cannot act as such, without mentioning the words 'bias or prejudice'; the second determines that bias or prejudice renders the judge disqualified to act. In spite of the omission noted in section 23, the parties are not lacking protection against the bias or prejudice of a judge. Section 83 of our Code of Civil Procedure, equivalent to section 397 of the California Code, provides that:

" 'The court may, on motion, change the place of trial in the following cases;

" ' *    *    *    *    *    *    *

" '2. When there is reason to believe that an impartial trial cannot be had therein.

" ' *    *    *    *    *    *    *

" '4. When from any cause the judge is disqualified from acting.

"The defendant argues that the paragraph which authorizes a change of venue when there is reason to believe that an impartial trial cannot be had refers to trials by jury, and has no application in Puerto Rico because civil cases here are not triable by jury. We agree that this provision tends to avoid, in the States of the Union where it is in force, the impanelling of a jury in a community prejudiced against any of the parties, when there is reason to believe that an impartial trial, free of bias and animosity, cannot be secured.

" *    *    *    *    *    *    *

"The Insular Legislature, knowing that in Puerto Rico there are no trials by jury in civil cases, enacted the subdivision 2 of section 83 of the Code of Civil Procedure. This provision, generally applied

in the States of the Union to the bias or prejudice of the inhabitants of a district qualified to serve as jurors, must necessarily apply in Puerto Rico to the bias or prejudice of the persons who are to act as judges, because here no trials by jury are held in civil cases. When this provision was incorporated in our code, it was done indeed with the purpose of making it effective in some way. There is no reason to suppose that the lawmaker uselessly enacted a provision which would have practically no application if judges are to be disregarded.

"" *   *   *   *   *   *   *

"In this jurisdiction, where there is no constitutional provision specifically requiring that justice be administered without prejudice, we maintain that this is a principle so necessary in the administration of justice that it cannot be ignored without impairment to the very justice which the courts must unavoidably protect. Subdivision 2 of section 83 would have no practical value, if it were not applicable to judges. Said subdivision should be construed in connection with subdivision 4, which authorizes changing the place of trial when from any cause the judge is disqualified to act."

It is true that §83 of the Code of Civil Procedure deals with the change of venue, and that in the motion for disqualification no change of venue is sought. Undoubtedly such change of venue was not sought because it was unnecessary, since the District Court of San Juan has four judges, and any of the three remaining judges who was not under the same conditions as the respondent judge, could have tried the case. The fact that the intervener sought that the case be heard by the court in bank and that the rules of the lower court prevented the judge who was assigned to the criminal section from acting in the court in bank, does not affect the motion, because the respondent judge had discretion to refuse that the case be heard in bank, and instead he could assign the motion to another judge, if the evidence regarding the disqualification precluded the judge from acting.

The motion for disqualification was not filed untimely, as alleged by the respondent judge and the interveners herein. That motion could not have been filed by someone not a party to the proceedings, and as originally the Union Republican

Party was not such party, first it had to ask leave to intervene for which reason it attached its answer, which showed its interest to intervene. It was only after the intervention had been granted and before the evidence on the plea of *res judicata* had been introduced, that the intervener filed its motion for disqualification.

Neither is the sufficiency of the motion affected by the fact that it was not verified, inasmuch as it was signed by the intervener's attorney and the signature of an attorney to a motion has the same legal effect as an oath pursuant to Rule 11 of the Rules of Civil Procedure.

The need for hearing intervener's evidence becomes more apparent when one considers the following incident which took place in the district court:

"The Court: . . . Now, as to this motion for disqualification, which I shall flatly deny, this court wishes the following statements to be entered in the record:

"Att'y. González Blanes: May it please the court. If your Honor is going to make statements about facts which are known to your Honor, I wish that an opportunity be given us to offer evidence regarding any question of fact which your Honor might enter in the record.

"The Court: After I have finished, then we shall go into that matter. It is well known in Puerto Rico that don Enrique Campos del Toro has been appointed Attorney General. It is a known fact in Puerto Rico that Attorney Antonio R. Barceló, Judge of the District Court of Guayama, will be appointed First Assistant Attorney General. Immediately after the appointment of Mr. Enrique Campos del Toro was announced, I was called to a meeting at the home of Attorney Enrique Campos del Toro, where the latter, Judge Barceló and myself were present. I was asked there if in my opinion it would prejuice Antonio R. Barceló to resign his post and receive the appointment of Assistant Attorney General, Attorney Enrique Campos del Toro having made up his mind to appoint Judge Barceló First Assistant Attorney General of Puerto Rico. The problem then arose that Judge Barceló had to take leave in order to dispose of the case he had pending, in order to take charge of the office of First Assistant Attorney General. It was there discussed which of the two, whether Judge Massari or myself, should go to Guayama,

and it was decided that since he was the judge at large, he should be transferred to Guayama.

"Then, when the filling of the vacancy existing in San Juan was considered, I was asked if I thought I could be appointed, that the Department of Justice was considering my name for a permanent appointment, if, as was expected at any time, Judge Córdova Díaz were promoted to the Supreme Court. We discussed the matter over. I set forth my arguments as to what I was to do, the time I needed for the new combination. That evening Mr. Campos del Toro informed me that Judge Córdova's appointment was expected at any time, that at least that was the impression he got in Washington. Then Judge Calderón was sent to Bayamón because in the event Judge Jorge Luis Córdova is promoted to the Supreme Court and I am appointed to the District Court of San Juan, Judge Calderón will most probably be appointed permanently Judge of the District Court of Bayamón, and Attorney Borinquen Marrero was appointed to Guayama, as in all probability the latter will be appointed judge in said district.

"Of course, this was an informal conversation and the Attorney General may change his mind if he deems it advisable; but I have come to this Court under the impression that if Judge Jorge Luis Córdova is appointed to the Supreme Court, I shall immediately be appointed, at least, the Attorney General will recommend me, as Judge of the District Court of San Juan.

"After entering these statements in the record, and that is all I wanted to state, it seems to me that the motion operates as a moral compulsion on this court and I, as Judge, will not tolerate it and, therefore I hereby deny it."

If the judge deemed it advisable to set forth what he believed to be the truth of the whole affair, it seems absolutely unfair and contrary to the due process of law, to deny the other party an opportunity to offer evidence in support of its contentions. To this effect, the holding in the case. of *People* v. *Gelpí*, 59 P.R.R. 36, 44, is apposite:

"The respondents should have been given an opportunity to prove the facts alleged in their motion and, if the same turned out to be false and malicious, then action should have been taken against them in accordance with the law. If the allegations made in the motion

turned out to be true, the plaintiffs in the action were entitled to request and obtain, on motion, the disqualification of the judge or the transfer of the case.''

■ In view of the seriousness of the charges against the respondent judge, it was advisable that he should have asked one of his fellow judges to pass upon the motion for disqualification. It seems opportune to repeat here what the Supreme Court of the United States, speaking through Mr. Chief Justice Taft, said in the case of *Cooke* v. *United States*, 267 U. S. 517, 539, as follows:

''Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecing the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indispensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward and injure the authority of the court by too great leniency. *The substitution of another judge would avoid either tendency* but it is not always possible. Of course where acts of contempt are palpably aggravated by a personal attack upon the judge in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attemps of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, *a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.* [Citing cases.] [Italics ours.]

''The case before us is one in which the issue between the judge and the parties had come to involve marked personal feeling that did not make for an impartial and calm judicial consideration and conclusion, as the statement of the proceedings abundantly shows. We think, therefore, that when this case again reaches the District Court to which it must be remanded, the judge who imposed the sentence herein should invite the senior circuit judge of the circuit to assign

another judge to sit in the second hearing of the charge against the petitioner.''

The lower court erred in denying the motion without giving the intervener an opportunity to offer its evidence.

█ We shall now pass to the plea of *res judicata*.

In the mandamus proceeding instituted by Luisa Boix Domínguez *et al.* in the district court, the defendants and the Union Republican Party alleged, as a special defense, that the issues raised in said action were decided against the plaintiffs therein in a final judgment of this court rendered in the mandamus proceeding, No. 396, brought by the Popular Democratic Party, Luis Muñoz Marín, Samuel R. Quiñones and David Benjamín Cruz, the latter, by himself and in representation of 85,018 persons, against the Insular Board of Elections of Puerto Rico, wherein the court, being equally divided in opinion, rendered judgment on March 28th last, adjudging that the writ of mandamus did not lie, *ante,* p. 284; and that between this suit and the one brought by Luisa Boix Domínguez *et al.* there exists a substantial identity between the parties and the causes of action.

In order to successfully invoke the plea of *res judicata* there must exist in the suits identity of parties and of causes of action and the judgment in the former suit must have been rendered on the merits by a court of competent jurisdiction.

The judge of the lower court admitted the existence of an identity of parties. To that effect he stated at page 63 of this opinion, on which he grounded his judgment issuing the writ of mandamus:

''We are inclined to agree with the defendants (*sic*) that David Benjamín Cruz, as a member of a class, represented the plaintiffs herein in the original action before the Supreme Court of Puerto Rico, and that it would be the same party if for other reasons the plea of *res judicata* lies.''

And he expressly admitted it again on paragraph 3 of the answer which he filed in this certiorari proceeding, to wit:

"Respondent admits the allegation made in the beginning of the third averment of the complaint to *the effect that a number of the 85,019 petitions included in the mandamus proceeding first brought before this court, likewise filed in the District Court of San Juan a petition for mandamus alleging facts identical to those alleged in this court and praying for an identical remedy.*" (Italics ours.)

Likewise, the plaintiffs in the suit for mandamus filed in the District Court, now interveners in this writ of certiorari, also admitted the identity of the parties in paragraph 2 of the answer which they filed in the proceeding, when they alleged:

"In answering the third averment of said petition for certiorari, interveners admit *that a part of the 85,019 petitioners who had filed mandamus proceeding before this Hon. Supreme Court filed in the District Court of San Juan a petition for mandamus seeking an identical remedy.*" (Italics ours.)

We concede that with respect to whether the suit for mandamus instituted before this court by David Benjamín Cruz and others was, properly speaking, a class suit there existed a discrepancy between the opinion rendered by Mr. Justice Todd, in which Mr. Justice Snyder concurred, and the one rendered by the author of this opinion, in which, by a separate opinion, the Chief Justice concurred.

But we must bear in mind that since a majority of the judges of this court did not concur in any of them, said opinions merely expressed the individual views of their authors. The division of opinion among the judges was the reason for the entry of the judgment that dismissed the petition for mandamus, but the grounds for a judgment form no part of the judgment itself. *Hertz v. Woodman*, 218 U. S. 205, 213. Considering that all the parties have expressly admitted the question involved, we feel bound to decide that as to the alleged plea of *res judicata* the identity of the parties has been fully established.

It is unquestionable that there existed an identity of causes of action. The respondent judge as well as the interveners

herein expressly admitted that fact in the paragraphs quoted from their respective answers. Nevertheless, if any doubt existed, it would be dispelled by comparing the petitions for mandamus in both suits.

Obviously, there is no need to discuss whether this court had jurisdiction to take cognizance of the mandamus proceeding instituted by David Benjamín Cruz *et al.* And finally, there is no question that said case of David Benjamín Cruz was decided on its merits, inasmuch as the judgment was not rendered because of some defect in the pleadings, or for want of jurisdiction, or upon some other ground which did not go to the merits of the case. *Durant* v. *Essex Company,* 74 U. S. 107, 109.

In the absence of any statute to the contrary, a judgment rendered by an equally divided court, with jurisdiction, is as conclusive and binding upon the same parties or their privies, as any other judgment rendered by a majority of the judges, and if said judgment is on the merits it constitutes *res judicata* in a subsequent action between the same parties or their privies, for the same cause of action, either in the same or an inferior court. However, the judgment rendered by an equally divided court is barred from becoming authority or establishing any rule for subsequent cases simply because the principles of law involved in the case have not been decided by a majority of the court. *Durant* v. *Essex Company,* 90 Mass. 103; *Durant* v. *Essex Company,* 74 U. S. 107; *Durant* v. *Essex Co.,* 101 U. S. 555; *Kolb* v. *Swann,* 13 A. 379; *Lyon* v. *Ingham Circuit Judge,* 37 Mich. 378; *Hertz* v. *Woodman, supra; United States* v. *Pink,* 315 U. S. 203, 216. The respondent and the intervener tried to distinguish between the judgment entered by a divided court in the exercise of its appellate function and one entered by the same court in the exercise of its original jurisdiction. Apparently they admit that in the first case, that is, when the judgment is entered in the exercise of the appellate jurisdiction, said

judgment constitutes *res judicata,* but that it does not have such an effect when it is entered in the exercise of its original jurisdiction. Such distinction is not sustained by authority nor on principle. The legal effects derived from both judgments are exactly the same. When this court, in the exercise of its appellate jurisdiction, reviews a judgment or resolution of a lower court, affirmative action by the majority of its judges is required to grant relief. Likewise, when the original jurisdiction of this court is resorted to affirmative action by a majority of its judges is required to grant relief. In either case, the judgment that prevails is the one rendered by this court, whether it be affirming the judgment appealed from in the first case or denying the remedy requested in the second. See *Hartman* v. *Greenhow,* 102 U. S. 672.

It is unquestionable that once we enter judgment denying the petition for mandamus filed by the Popular Democratic Party, Luis Muñoz Marín, Samuel R. Quiñones, and David Benjamín Cruz, these same petitioners or any of them may not afterwards file in this court the same petition or another one substantially the same against the same defendants, because they would be barred by the defense of *res judicata,* when raised by the defendants. If that judgment constitutes *res judicata* in this court, why should not it constitute *res judicata* when the same suit between the same parties is later on filed in the district court?

The case of *Hertz* v. *Woodman, supra,* cited by the respondent, sustains the thesis of the petitioners in this case, for it is held therein that under the precedents laid down by the Supreme Court of the United States, a judgment entered by a divided court which affirms the judgment appealed from constitutes a final adjudication between the parties, but since the principles of law involved in the same have not been concurred in by a majority of the court, that circumstance prevents the case from being cited as a precedent for a determination of other analogous cases either in the Supreme

Court of the United States or in any other inferior court. The case of *Gary Realty Co.* v. *Swinney*, 17 S. W. (2d) 505, also cited by the respondent, is manifestly erroneous. It was held there that the case of *State* v. *Trimble*, 247 S. W. 187, could not be *res judicata* for the reason that in the opinion rendered in said case of *State* v. *Trimble* a majority of the members of the court did not concur.

We have pointed out that a judgment entered by a divided court constitutes *res judicata* if it contains the other necessary elements to raise said defense, that is, identity of the parties, identity of cause of action, jurisdiction, and a decision of the case on the merits. Furthermore, regardless of the error which we have just pointed out, there exists in the cited case of *Gary Realty Co.* v. *Swinney, supra,* the error of fact consisting in supposing that the judgment in the case of *State* v. *Trimble, supra,* was rendered by a divided court. It is sufficient to examine the opinion in this latter case to realize that what really occurred in said case was that the court which decided it was made up of seven judges; that two of them concurred with the judge who wrote the opinion of the case, that two agreed with the result reached by the first three, and that the remaining two dissented. Such being the situation, the judgment rendered in said case was one of five judges against two. The case of *State* v. *Trimble, supra,* may not serve as an authority for analogous cases dealing with the same legal principles, but it is unquestionable that it may constitute *res judicata* if between said case and the subsequent one there exist the necessary requisites to successfully raise said defense.

The other cases cited by the district judge are inapposite.

Having reached the conclusion that the defense of *res judicata* should have prevailed, it is unnecessary to determine whether or not within the circumstances of this case, and taking into consideration the allegations which the defendants and the intervener made in the lower court in opposition to

the petition for mandamus, the lower court erred in issuing the peremptory writ of mandamus without receiving evidence with relation to the merits of the case.

The decision which we have just reached with relation to the defense of *res judicata* disposes of the case and it is unnecessary that Judge Belaval, or any other judge in his place, entertain the motion for disqualification. But something a great deal more important than the mere decision of a suit is involved in the instant case. A member of the bar has made a serious imputation against a judge, in which there are other public officers involved, including the present Governor of Puerto Rico. Such a situation can not be ignored by this court. It should be cleared up through a proper criminal investigation. If the facts stated in the motion should be true, Judge Belaval and others must be evidently punished. On the contrary, if the imputation was made by a member of the bar without any basis whatsoever, in addition to the criminal action that may be taken against him adequate proceedings to take disciplinary action against him must be instituted by this court.

For the foregoing reasons the peremptory writ of mandamus must be quashed and the case must be remanded to the lower court with instructions to enter judgment dismissing the petition for mandamus.