**PROTECTOSEAL COMPANY, an Illinois corporation, Plaintiff–Appellant,**

v.

**Charles BARANCIK, Defendant–Appellee.**

No. 93–3229.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1994.

Decided May 5, 1994.

Michael J. Abernathy, Scott M. Mendel (argued), Julie M. Rubins, Victor E. Grimm, Bell, Boyd & Lloyd, Chicago, IL, for plaintiff-appellant.

Bradley P. Nelson, Steven A. Weiss (argued), Schopf & Weiss, Chicago, IL, for defendant-appellee.

Before CUMMINGS, BAUER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The Protectoseal Company (Protectoseal) appeals the dissolution of a permanent injunction prohibiting Charles Barancik from serving as one of Protectoseal's directors. We affirm.

## BACKGROUND

Protectoseal is a privately-held Illinois corporation engaged in the manufacture and sale of products such as safety cans, storage cabinets, drum vents, and safety faucets designed to handle and store flammable liquids. Barancik and his wife Margery are the sole owners of Justrite Manufacturing Company, one of Protectoseal's business competitors.

In September of 1971, Barancik purchased 16.2% of Protectoseal's shares and used the shares to become one of Protectoseal's directors. Fearing a conflict of interest because Barancik "ha[d] put himself in a position to learn all of [Protectoseal's] operations including [Protectoseal's] manufacturing, merchandising and pricing policies, new products and full details respecting [Protectoseal's] costs and expenses as well as similar data respecting the business of Justrite Manufacturing Company[,]" other Protectoseal board members served Barancik with a written demand that Barancik resign from Protectoseal's board of directors. Barancik refused, and Protectoseal filed a complaint under § 8 of the Clayton Act, which provided (in 1971) that:

> No person at the same time shall be a director in any two or more corporations, any one of which has capital, surplus, and undivided profits aggregating more than $1,000,000, engaged in whole or in part in commerce, ... if such corporations are or shall have been theretofore, by virtue of their business and location of operation, competitors, so that the elimination of competition between them would constitute a violation of any of the provisions of any of the antitrust laws[.]

15 U.S.C. § 19. After a hearing the court determined that because Justrite's capital, surplus, and undivided profits totalled more than $1,000,000, the district court issued a permanent injunction barring Barancik from serving as one of Protectoseal's directors and from voting any of his shares for the election of directors. This court affirmed the entry of the injunction, noting that "the statute reflects a public interest in preventing directors from serving in positions which involve either a potential conflict of interest or a potential frustration of competition." *Protectoseal Co. v. Barancik*, 484 F.2d 585, 589 (7th Cir.1973).

Some seventeen years later, Congress in 1990 amended § 8 of the Clayton Act by increasing the minimum threshold amount of capital, surplus, and undivided profits necessary to prohibit interlocking directorates from $1,000,000 to $10,000,000, computed "at the end of that corporation's last completed fiscal year." Pub.L. 101–588. Because Justrite's capital, surplus, and undivided profits did not exceed $10,000,000, on April 1, 1991, Barancik returned to court and requested that the court vacate the permanent injunction. The judge conducted a hearing and set aside the injunction previously granted after determining that Justrite's capital, surplus, and undivided profits did not exceed $10,000,000. Protectoseal appeals.

## ISSUE

Whether the court erroneously granted Barancik's Fed.R.Civ.P. 60(b)(5) motion to lift the permanent injunction enjoining Barancik from serving as one of Protectoseal's directors.

## DISCUSSION

### Standard of Review

The trial court dissolved the injunction at issue pursuant to Fed.R.Civ.P. 60(b)(5), which provides in part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) ... it is no longer equitable that the judgment should have prospective application[.]

"[M]odification of a permanent injunction is extraordinary relief, and requires a showing of extraordinary circumstances." *Money Store, Inc. v. Harriscorp Finance, Inc.*, 885 F.2d 369, 372 (7th Cir.1989) (citing *United States v. City of Chicago*, 663 F.2d 1354, 1360 (7th Cir.1981) (en banc)). "We review decisions by the district court on Rule 60(b)(5) motions under an abuse of discretion standard." *Id.* "However, deferential review does not mean no review at all. We must be satisfied that the district court's decision was guided by established principles of law." *Id.* (citations omitted).

### A.

Initially Protectoseal contends the district judge did not employ established principles of law when assessing Barancik's Rule 60(b)(5) motion to set aside the permanent injunction. Specifically, Protectoseal

argues that the court should not have used the "flexible standard" for considering Rule 60(b)(5) motions adopted in *Rufo v. Inmates of Suffolk County Jail,* —— U.S. ——, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). It argues that *Rufo,* which concerned prison reform litigation, is inapplicable in the commercial context because prison reform litigation has a great impact on the public whereas commercial litigation of the type at issue in the instant case primarily affects only the parties to the suit. It favors the standard set forth in *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), requiring "nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions" before a consent decree or injunction may be modified.

Just last year (1993) this court rejected Protectoseal's argument in *Matter of Hendrix,* 986 F.2d 195 (7th Cir.1993), wherein we affirmed the modification of a defendant's bankruptcy discharge after noting that the bankruptcy discharge had "the force of an injunction[:]" *Id.* at 197. We observed that *Rufo* abandoned the "grievous wrong" standard of *Swift* and adopted a "flexible standard," one which "is no less suitable to other types of equitable case[s].... So now a court can modify an injunction that it has entered previously whenever the principles of equity require it to do so." *Id.* at 198.

■ Blatantly disregarding the very limiting language of the statute, Protectoseal contends that principles of equity do not require the dissolution of the injunction against Barancik from serving as one of Protectoseal's directors because if Barancik is allowed to serve on Protectoseal's board of directors, he will be privy to sensitive information that he can use to Justrite's advantage, thereby harming Protectoseal. It submits that the 1990 amendment to the Clayton Act failed to alter the underlying purpose of the statute, which was to prevent directors from serving in positions which raise conflicts of interest and threaten competition.

■ We agree that Congress's intention in raising the threshold amount from $1,000,000 to $10,000,000 was not to alter the section's underlying purpose of protecting competi-

tion. Clearly Congress did not mean to prevent *all* conflicts of interest or *all* anticompetitive conduct. Had such been Congress's purpose, it would have imposed a flat ban on interlocking directorates between competing corporations. Instead, "[r]ather than enacting a broad scheme to ban all interlocks between potential competitors, Congress approached the problem of interlocks selectively," *Bankamerica Corp. v. United States,* 462 U.S. 122, 127, 103 S.Ct. 2266, 2270, 76 L.Ed.2d 456 (1983), and established a minimum net worth requirement, indicating its intendment to regulate only those corporations which are engaged in a significant degree of commerce.

■ "When a change in the law authorizes what had previously been forbidden it is an abuse of discretion for a court to refuse to modify an injunction founded on the superseded law." *American Horse Protection Ass'n v. Watt,* 694 F.2d 1310, 1316 (D.C.Cir. 1982). "There can be no doubt but that sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have arisen." *System Federation No. 91, Railway Employees' Department, AFL–CIO v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). In this case, the lifting of the injunction was mandated by a significant change in circumstances, i.e., Congress's decision to raise the minimum amount under § 8 to $10,000,000. So long as Justrite's capital, surplus, and undivided profits do not exceed $10,000,000, Barancik is entitled to the extraordinary relief granted to him under Rule 60(b)(5).

*B.*

■ Protectoseal concedes that Justrite's capital, surplus, and undivided profits did not exceed $10,000,000, but contends the court erred by failing to aggregate the capital, surplus, and undivided profits of four other companies in addition to Justrite which Barancik owns or controls under the name "Bar-

ancik Industries."[1] Barancik's other companies are Hamilton Industries, Inc., Chicago Etching Corporation, Associated Sprinkler Company, and Northbrook Management Corporation. Protectoseal submits that Justrite is one of Barancik's subsidiaries and that Barancik's companies should be viewed as a single economic unit for purposes of calculating whether § 8's $10,000,000 threshold has been crossed.

"If the intent of Congress is clear, that is the end of the matter; for the Court ... must give effect to the unambiguously expressed intent of Congress." *Condo v. Sysco Corp.*, 1 F.3d 599, 603 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994) (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). The language of § 8 is clear in not applying the aggregation theory to overcome the $10,000,000 threshold. The statute prohibits interlocking directors between competing "corporations" if "each of the corporations" has capital, surplus, and undivided profits totalling more than $10,000,000. The two corporations at issue here are Protectoseal and Justrite. Although Barancik is chairman of the board of Justrite, Hamilton Industries, Inc., Chicago Etching Corporation, Associated Sprinkler Company, and Northbrook Management Corporation, we refuse to conclude that Barancik's companies are a "single enterprise" based solely on the fact that he owns or controls each corporation. Barancik's other companies are all independent of Justrite. Each is separately incorporated and has separate offices, manufacturing facilities, bank accounts, and customers. Each files separate tax returns and maintains separate records and financial statements. Protectoseal's citations to *United States v. Crocker National Corp.*, 656 F.2d 428 (9th Cir.1981), *rev'd on other grounds, Bankamerica Corp. v. United States*, 462 U.S. 122, 127, 103 S.Ct. 2266, 2270, 76 L.Ed.2d 456 (1983), *Square D. v. Schneider S.A.*, 760 F.Supp. 362 (S.D.N.Y. 1991) and *In re Borg–Warner Corp.*, 101 FTC 863 (1973), *modified in part*, 102 FTC

1164 (1983), *rev'd on other grounds*, 746 F.2d 108 (2nd Cir.1984) fail to support its argument because each of these cases addressed the issue of § 8's requirement that the corporations be competitors (specifically whether the competition requirement applied to parent corporations whose subsidiary competed with the interlocked corporation), and not whether the assets of the parent should be aggregated to those of the subsidiary when determining net worth. In any event, Justrite is not a parent or subsidiary of any other corporation.

Protectoseal's theory fails for another reason, as well: § 8 "prohibits only shared directors between *competing corporations*[.]" *Bankamerica Corp.*, 462 U.S. at 128, 103 S.Ct. at 2270 (emphasis added). Protectoseal has not refuted Barancik's evidence that his other companies do not compete with Protectoseal or Justrite. Hamilton manufactures drafting equipment and specialty laboratory furniture, Associated Sprinkler produces fire sprinkler equipment and provides related services, Dynacircuits manufactures printed circuits, and Northbrook Management provided personnel to Barancik's companies. Given that each of these companies, including Justrite, is separately incorporated and operates independently, that none is the other's parent or subsidiary, and that the companies manufacture different products and provide different services, we fail to understand how aggregating their capital, surplus, and undivided profits as Protectoseal urges will advance the Act's underlying purpose of protecting competition. In sum, we conclude that trial court did not abuse its discretion by considering only Justrite's capital, surplus, and undivided profits and that under the circumstances the court correctly rejected Protectoseal's aggregation theory.

Finally, we reject Protectoseal's untimely argument that director interlocks falling outside the provisions of § 8 may yet be prohibited by the Sherman Act, 15 U.S.C. § 1 and 2 and the Federal Trade Commission Act, 15 U.S.C. § 45. Protectoseal did not sufficiently present this argument to the district court and has therefore waived it on

---

1. "Barancik Industries" is "not a corporation or any other kind of legal entity; it is merely a descriptive name that refers to the companies in which Mr. Barancik has a majority ownership."

appeal. *Hayden v. La–Z–Boy Chair Co.*, 9 F.3d 617, 621 (7th Cir.1993) (citing *Evans v. Fluor Distribution Cos., Inc.*, 799 F.2d 364, 366 (7th Cir.1986)).

### *CONCLUSION*

The district judge did not abuse his discretion in lifting the permanent injunction against Barancik pursuant to Fed.R.Civ.P. 60(b)(5) because due to the increased threshold amount under § 8 of the Clayton Act, Barancik is no longer prohibited from serving as one of Protectoseal's directors. The judgment is affirmed.