**Bradford E. WHITE, Michel J. Messier and John A. Wasik, Plaintiffs,**

v.

**CENTRAL VERMONT PUBLIC SERVICE CORPORATION, Frederic H. Bertrand, Robert P. Bliss, Jr., Elizabeth Coleman, Luther F. Hackett, Frances Hutner, F. Ray Keyser, Jr., Mary Alice McKenzie, Gordon P. Mills, Preston Leete Smith, Robert D. Stout, Thomas C. Webb, and Fred W. Yeadon, Jr., Defendants.**

No. 2:94–cv–386.

United States District Court, D. Vermont.

Sept. 20, 1996.

Carl H. Lisman, Lisman & Lisman, Burlington, VT, Victor H. Polk, Jr., Bingham, Dana & Gould, Boston, MA, for plaintiffs.

Joseph Michael Kraus, Central Vermont Public Service Corporation, Rutland, VT, for Central Vermont Public Service Corp.

Robert Berry Luce, Downs, Rachlin & Martin, P.C., Burlington, VT, Randall W. Bodner, Philip C. Koski, Ropes & Gray, Boston, MA, for Frederic H. Bertrand, Robert P. Bliss, Jr., Elizabeth Coleman, Luther F. Hackett, Frances C. Hutner, Mary Alice McKenzie, Gordon P. Mills, Preston Leete Smith, Robert D. Stout, Fred W. Yeadon, Jr.

Edwin H Amidon, Jr., Roesler, Whittlesey, Meekins & Amidon, Burlington, VT, for Thomas C. Webb.

Peter Welles Hall, Reiber, Kenlan, Schwebert, Hall & Facey, Rutland, VT, for F. Ray Keyser, Jr.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs, shareholders and customers of Central Vermont Public Service Corporation ("CVPS"), an electric utility, bring suit against CVPS and members of its board of directors for violation of federal antitrust law and for breach of fiduciary duty. All Defendants have moved to dismiss the Complaint

for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendants' motion to dismiss is GRANTED.

## Background

According to the Complaint, for several years CVPS has faced competitive pressure from alternative suppliers of fuel, while at the same time environmentalists and regulators were forcing CVPS itself to reduce demand for electric water and space heating by promoting fuel-switching.[1] CVPS did not invest in these alternative fuel services such as propane and oil, but chose instead to attempt, unsuccessfully, to improve its poor performance by speculating in riskier energy-related ventures. Verified Complaint, ¶¶ 11–14.

Plaintiffs allege that Defendant F. Ray Keyser, Jr., Chairman of the Board of CVPS, and his family own and have acquired businesses ("the OSI companies") which distribute oil and propane products in the CVPS service area in direct competition with CVPS. Id., ¶¶ 15–18. Keyser's asserted conflict of interest has influenced CVPS's judgment not to enter these alternative fuel markets and not to disclose the conflict of interest to shareholders. Id., ¶¶ 16–22. The other members of the board of directors have neither urged investment in propane or fossil fuels nor addressed the issue of Keyser's conflict of interest. Id., ¶¶ 23–26.

CVPS and its Board, by ignoring the conflict of interest, have allowed CVPS to have

> the worst of both worlds. It has lost revenues to other energy sources through its own 'fuel switching' efforts while currently earning the enmity of environmentalists and regulators and consuming valuable financial and human resources because of the realization of the economic consequences of switching customers to alterna-

tive fuels without a corresponding presence in that market.

Id., ¶ 32.

On November 10, 1994, Plaintiff Bradford E. White wrote to CVPS requesting a copy of its shareholder list. CVPS denied White's request on November 15, 1994.

Plaintiffs filed their lawsuit on December 30, 1994, asserting that, as representatives of a class of similarly situated consumers, they had been injured by Keyser's conflict of interest, in violation of federal law prohibiting interlocking directorates between competing companies, Clayton Act § 8, 15 U.S.C. § 19 (1973). As shareholders of CVPS, they brought corporate causes of action against Keyser and other members of the CVPS board of directors for breach of fiduciary duty. Finally, White sought to enforce CVPS's obligation under Vermont law to provide a shareholder list upon proper request.

## Discussion

Defendants have argued three points in their motion to dismiss. First, they argue that Count I, which alleges a violation of the Clayton Act's interlocking directorate prohibition, should be dismissed for failure to state a claim upon which relief can be granted. Second, they argue that Counts II and III, which assert shareholder derivative claims of breach of fiduciary duty, should be dismissed for failure to satisfy the pleading requirements of Fed.R.Civ.P. 23.1. Third, they argue that Count IV, which seeks a list of CVPS shareholders, should be dismissed for failure to comply with the statutory prerequisites for obtaining a shareholder list set forth at Vt.Stat.Ann. tit. 11A, § 16.02 (1993).

### I. Motion to Dismiss Antitrust Claim.

Defendants have asserted three grounds in support of their claim that Plaintiffs' Clayton Act count should be dismissed: one, that Plaintiffs do not satisfy the statutory "jurisdictional threshold" for bringing a case under § 8 of the Clayton Act; two, that Plaintiffs

---

1. Fuel-switching programs offer financial assistance to retail customers of electricity for water and space heating to switch to alternative sources of fuel, if such a switch would be cost-effective. Least–Cost Investments, Energy Effi- ciency, Conservation and Management of Demand for Energy, Docket No. 5270–CV–1, 122 Pub.Util.Rep.4th 153, 1991 WL 501827 (Vt.Pub. Serv.Bd. Mar. 19, 1991).

lack standing to bring a § 8 claim; and three, that they are immune from this antitrust attack under the state action doctrine and under the *Noerr–Pennington* doctrine. The Court finds that Plaintiffs have not satisfied the jurisdictional threshold for bringing an interlocking directorate complaint under § 8 of the Clayton Act, 15 U.S.C. § 19, and therefore does not reach Defendants' second and third arguments.

### A. Clayton Act § 8 "Jurisdictional Threshold"

Section 8 of the Clayton Act, as amended effective November 16, 1990, provides in relevant part:

> No person shall, at the same time, serve as a director or officer in any two corporations ... that are—
>
> (A) engaged in whole or in part in commerce; and
>
> (B) by virtue of their business and location of operation, competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws; if each of the corporations has capital, surplus, and undivided profits aggregating more than $10,000,000 as adjusted ...[2]

15 U.S.C. § 19(a)(1).

Plaintiffs do not dispute that they cannot state a claim under the statute as it currently exists or as it existed at the time they filed their complaint, because they cannot show the requisite minimum amounts. Plaintiffs contend, however, that the relevant statute is the one which existed at the time of Defendant Keyser's wrongful conduct, asserted to be from 1981 to 1990. Prior to the 1990 amendment, 15 U.S.C. § 19 prohibited interlocking directorates if either company had $1,000,000 in capital, surplus and undivided profits.

The issue therefore is whether the 1990 amendment should apply to conduct which occurred prior to its enactment in a case which was not filed until after the effective date of the amendment. At the outset, it is

far from clear whether Defendants have actually challenged the court's subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or challenged the adequacy of the pleadings pursuant to Fed.R.Civ.P. 12(b)(6). *See Montana–Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951). Under either analysis the outcome, dismissal of the Count, must be the same, however. The only distinction in this case between dismissal for lack of subject matter jurisdiction or for failure to state a claim is in whether the Court has discretion under 28 U.S.C. § 1367 to retain jurisdiction over the pendent state claims set forth in Counts II through IV.

The United States Supreme Court in the recent case of *Landgraf v. USI Film Prod.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), described the analysis a court must undertake to determine whether Congress intended a statute to apply to events which took place before its enactment:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. *See also Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575–76, 108 L.Ed.2d 842 (1990) (starting point for interpretation of statute is 'language of the statute itself. Absent a

---

**2.** 15 U.S.C. § 19(a)(5) provides for an annual adjustment of the $10,000,000 threshold based on an amount equal to the percentage increase or decrease in the gross national product. As of

the date this complaint was filed, the adjusted jurisdictional threshold was $12,092,000. Revised Jurisdictional Thresholds for Section 8 of the Clayton Act, 59 Fed.Reg. 751 (1994).

clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.') (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The plain language of the 1990 amendment does not state whether it is to be applied to causes of action which arose prior to the statute's effective date. The next step is to determine whether the statute has retroactive effect. *Landgraf,* 511 U.S. at 280–81, 114 S.Ct. at 1505.

### 1. Retroactive effect.

■ As the Supreme Court noted, a statute does not have retroactive effect merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. *Landgraf,* 511 U.S. at 268–70, 114 S.Ct. at 1499 (citation omitted). The question is rather whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. at 1505. The 1990 amendment places no such burdens on either party.

The statute does not impair rights possessed by Defendant Keyser during the 1981–1990 period complained of. On the contrary, obviously it legalizes what was assertedly illegal conduct at the time.

Although Plaintiffs possessed a right to seek redress for an illegal interlocking directorate such as they describe in their complaint during this period, they did not then act. The statute does not impair rights possessed by Plaintiffs *when they acted,* in December, 1994, by filing a lawsuit. At the time they took that action, they did not possess a right to sue under 15 U.S.C. § 19 unless they could show that both corporations possessed capital, surplus and undivided profits aggregating more than $10,000,-000. *See by contrast In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 930 F.Supp. 68 (S.D.N.Y.1996) (statute withdrawing jurisdiction over civil RICO claims would not apply to pending case because it would impair plaintiffs' ability to recover damages for possible violation of federal law).

The statute does not increase either party's liability for past conduct; it eliminates Defendant Keyser's liability. Nor does the statute impose new duties with respect to transactions already completed. In short, the statute does not operate retroactively with regard to this case.

Since the statute does not operate retroactively, it is not necessary to ascertain Congressional intention as to the scope of the statute. Nevertheless, the legislative history of the 1990 amendment to 15 U.S.C. § 19 does suggest that Congress intended to alter the district courts' jurisdiction over interlocking directorate suits.

### 2. Congressional intent.

The House Report, noting that the "jurisdictional test" in section 8 remained unchanged since its enactment in 1914, stated that the purpose of The Interlocking Directorate Act of 1990 was to amend section 8 of the Clayton Act by "increasing the jurisdictional threshold from $1 million to $10 million." "While the fundamental purpose behind the enactment of section 8 remains an important one, the Committee has concluded that the original statute's jurisdictional threshold does not adequately reflect the size or nature of the modern corporation in the current economy." The Subcommittee on Economic and Commercial Law recognized "that the existing ban on directoral interlocks was tied to a jurisdictional trigger of $1 million that was over 75 years old and expressed in 1914 dollars." H.R.Rep. No. 101–483, 101st Cong., 2nd Sess. 1–5 (1990).

The Senate Report similarly noted that a purpose of the act was to "raise[ ] the jurisdictional threshold, ... to reflect our modern economy and inflation." It stated specifically:

> Because of the substantial increase in price levels since 1914, this [$1 million] dollar threshold is obviously far lower than the size of corporations Congress originally sought to cover.... By increasing the threshold, it is the intention of the committee to maintain the original congressional intent of applying the sections only to cor-

porations which are engaged in some significant degree of commerce.

S.Rep. No. 101–286, 101st Cong., 2nd Sess. 2, 5 (1990).

The language of the legislative history demonstrates that Congress intended to alter a jurisdictional trigger or threshold in order to restore the original Congressional intent of regulating only those corporations engaged in a significant degree of commerce, rather than to prevent all conflicts of interest or anticompetitive conduct. *See also Protectoseal Co. v. Barancik,* 23 F.3d 1184, 1187 (7th Cir.1994).

The United States Supreme Court pointed out that it "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf,* 511 U.S. at 272–74, 114 S.Ct. at 1501. *See also Bruner v. United States,* 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952); *Hallowell v. Commons,* 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916).

As Justice Scalia discussed in his concurring opinion in *Landgraf,* the key concern of a jurisdictional provision is with the ability to exercise judicial power over a case, not with the conduct or events giving rise to the claim. A new jurisdictional rule may or may not leave a litigant with an alternate forum for his claim, but

> the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised. Thus, applying a jurisdiction-eliminating statute to undo past judicial action would be applying it retroactively; but applying it to prevent any judicial action after the statute takes effect is applying it prospectively.

*Id.,* at 293, 114 S.Ct. at 1525 (Scalia, J., concurring).

The Supreme Court recognized an "apparent tension" between two rules of statutory construction which could apply in cases where the issue of retroactivity is raised: one, "that 'a court is to apply the law in effect at the time it renders its decision;'" and two, that "'[r]etroactivity is not favored in the law.'" *Landgraf,* 511 U.S. at 264, 114 S.Ct. at 1496 (1994) (quoting *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988)). However, as the Court noted, "where the congressional intent is clear, it governs." *Landgraf,* 511 U.S. at 264, 114 S.Ct. at 1496. There is no need to resort to canons of statutory construction in this case, because congressional intent is clear.

### 3. Savings Clause, 1 U.S.C. § 109.

■ Plaintiffs urge this Court to find that the general savings clause, 1 U.S.C. § 109 (1985) applies to save their cause of action under the pre–1990 version of 15 U.S.C. § 19. The savings clause provides, in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

In *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536–37, 41 L.Ed.2d 383 (1974), the United States Supreme Court explained that the savings clause was enacted to abolish the common law presumption that repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition. Historically the Court has held that the clause covered criminal statutes. *Id.* at 661, 94 S.Ct. at 2537 (citing *United States v. Reisinger,* 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480 (1888)). But the Court and several lower courts have also applied the savings clause in civil cases. *See De La Rama S.S. Co. v. United States,* 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422 (1953) (savings clause permitted insured to recover from government for loss of ship insured under the War Risk Insurance Act, notwithstanding its repeal); *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910) (savings clause extends to liability or obligation to pay a tax imposed under a repealed

statute); *Commonwealth of Mass., Dept. of Pub. Welfare v. Secretary of Agric.*, 984 F.2d 514 (1st Cir.) (savings clause permitted Food and Nutrition Service to impose sanctions against Commonwealth for exceeding allowable margin of error for distributing food stamps, despite repeal of quality control program), *cert. denied*, 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); *Keener v. Washington Metro. Area Transit Auth.*, 800 F.2d 1173 (D.C.Cir.1986) (under savings statute, repeal of workers' compensation act did not result in forfeiture of remedies available at time of repeal for injuries incurred prior to repeal), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

If the "very purpose of Congress [was] to take away jurisdiction, of course it [would] not survive," and § 109 does not save a statute solely jurisdictional in its scope. *De La Rama*, 344 U.S. at 390, 73 S.Ct. at 383–84. Section 8 of the Clayton Act is not solely a jurisdictional statute, however; it sets forth the elements of a violation of the prohibition against interlocking directorates.

The question in this case then is whether the amendment to Section 8 of the Clayton Act has the effect of releasing or extinguishing a liability incurred under the statute, neither party having suggested that a penalty or forfeiture is involved here. A close look at the cases holding that the savings statute has preserved civil liabilities incurred under a repealed or amended statute reveals that "liability incurred" is narrowly interpreted.

The United States Supreme Court in *Hertz v. Woodman*, 218 U.S. at 217–221, 30 S.Ct. at 624–26, discussed the meaning of "liability incurred" in the general savings statute in the context of an inheritance tax case. Woodman's executors sought to recover an inheritance tax paid under protest. The statute in effect at Woodman's death provided that an inheritance tax was "due and payable" within one year of the death of a testator. After Woodman's death, but before the tax was collected or his legacies were distributed, the statute was repealed. The Court held that because the right of succession was absolute upon Woodman's death, and no other fact or event was essential to the imposi-

tion of liability, liability for the tax had been imposed at that time. Because death occurred prior to the repeal, the savings provision operated to preserve the tax liability. *Id.* at 224, 30 S.Ct. at 627.

*Hertz v. Woodman* was an action to recover a "liability" already imposed and collected, as opposed to an action to adjudicate whether liability existed, as is presented in the instant case.

The cases that have held that the savings statute preserved a civil cause of action have, almost without exception, involved actions to enforce collection or recovery of a liability already incurred by operation of contract or law, as opposed to actions seeking adjudication of whether liability existed at all. *See De La Rama*, 344 U.S. at 388, 73 S.Ct. at 382–83 (government agreed that it had incurred liability to shipping company under the War Risk Insurance Act prior to its repeal, and question was where could liability be enforced); *Keener*, 800 F.2d at 1175, 1179 (suit for recovery of workers' compensation benefits); *Lovetro v. United States*, 602 F.Supp. 574 (S.D.N.Y.1984) (suit for wrongfully withheld wages and double-wage penalty).

However, in *Professional & Business Men's Life Ins. Co. v. Bankers Life Co.*, 163 F.Supp. 274, 295 (D.Mont.1958), a district court observed in dictum that § 109 would save an antitrust cause of action under section 7 of the Sherman Act, "to give effect to the will and intention of Congress." As discussed above, Congress's intention in amending section 8 of the Clayton Act was expressly to return to the practice of regulating conflicts of interest only in those corporations engaged in a significant degree of commerce. Reading § 109 to save the pre-amendment version of 15 U.S.C. § 19 would run counter to "the will and intention of Congress," unlike the situation presented in *Professional & Business Men's Life*.

Accordingly, this Court holds that 1 U.S.C. § 109 does not preserve Plaintiffs' right to sue under the pre-amendment version of 15 U.S.C. § 19, because liability had not been incurred under the pre-amendment version, and because the will and intention of Con-

gress was to eliminate the jurisdiction of the district courts to hear such cases.

Because the 1990 amendment in fact does not operate retroactively according to the *Landgraf* test; because Congress's stated intention was to limit jurisdiction over interlocking directorate claims; and because the savings statute, 1 U.S.C. § 109, does not apply under these circumstances; the 1990 amendment applies to this 1994–filed case. Defendants' motion to dismiss the antitrust count is Granted for failure to satisfy the jurisdictional threshold established by the 1990 amendment to section 8 of the Clayton Act, 15 U.S.C. § 19.

## II. Supplemental Jurisdiction over Shareholder Claims

■ The remaining counts of Plaintiffs' complaint assert state law claims, for which there is no independent basis for federal jurisdiction. A district court has supplemental jurisdiction over claims that are so related to a claim over which it has original jurisdiction that it forms part of the same case or controversy. 28 U.S.C. § 1367(a) (1993).

The federal claim having been dismissed, the next issue is whether it continues to be appropriate to exercise supplemental jurisdiction over the remaining counts of Plaintiffs' complaint. When a court has dismissed all claims over which it has original jurisdiction, it may, but is not required to, decline to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c)(3).

28 U.S.C. § 1367(c) specifies four circumstances under which supplemental jurisdiction may be declined, one of which is when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Prior to the enactment of § 1367 in 1990, the exercise of judicial discretion to hear a pendent state claim was guided by *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), in which the Court stated:

It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justifica-

tion lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Section 1367(c) rejected the language in *Gibbs* which seems to require dismissal of state claims if the federal claim is dismissed before trial by providing that even in those circumstances the decision to retain or relinquish jurisdiction is within the court's discretion. *See* McLaughlin, *The Federal Supplementary Jurisdiction Statute—A Constitutional and Statutory Analysis,* 24 Ariz.St.L.J. 849, 980 (1992). *See also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). *But see Salim v. Proulx,* 93 F.3d 86, 91–92 (2d Cir.1996).

Because the dismissal of the federal claim has occurred "at the threshold" of the case, and before the parties have engaged in discovery on the pendent claims, this Court exercises its discretion under 28 U.S.C. § 1367(c)(3) to dismiss the pendent state claims in Counts II through IV. *Salim,* 93 F.3d at 87–88.[3]

If the dismissal of the antitrust count is based on lack of jurisdiction over the subject matter of the suit, this Court of course lacks the power to adjudicate any supplemental claims appended to it, and the remaining claims must be dismissed. *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 73 (2d Cir.1984). *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 254 (2d Cir.1979).

## CONCLUSION

Defendants' Motion to Dismiss the Complaint (paper 9) is hereby GRANTED. All other motions pending as of the date of this opinion are hereby DENIED as MOOT.

---

**3.** Should the Plaintiffs choose to refile their claims in state court, of course 28 U.S.C.

§ 1367(d) will operate to toll the period of limitations.